# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

No. 22-1806

## JENNIFER D. ALDEA-TIRADO
Plaintiff - Appellant

v.

## PRICEWATERHOUSECOOPERS LLP
Defendant - Appellee

## ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
## DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

### HONORABLE JAY A. GARCÍA-GREGORY
### UNITED STATES DISTRICT JUDGE
### CASE NO. 21-1525

## BRIEF ON APPEAL
## SUBMITTED BY PLAINTIFF/APPELLANT
## JENNIFER D. ALDEA-TIRADO

**Counsel for Plaintiff**
**Maricarmen Almodóvar-Díaz**
**U.S.C.A. No. 5970**
**U.S.D.C.-P.R. No. 204406**
**P.O. Box 363871**
**San Juan, Puerto Rico 00936-3871**
**(787) 233-3306**
**malmodovarlaw@gmail.com**

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

No. 22-1806

## JENNIFER D. ALDEA-TIRADO
### Plaintiff - Appellant
### v.
## PRICEWATERHOUSECOOPERS LLP
### Defendant - Appellee

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                                    **-iii-**

                                                                           **PAGES**

**I.      SUBJECT MATTER JURISDICTION**                                        **1**

**II.     STATEMENT OF ISSUES**                                              **1-2**

    a. The district court erred by granting Motion to Compel Arbitration despite the existence of genuine issues of material facts on whether Ms. Aldea-Tirado consented to Arbitration;

    b. The district court erred by granting Motion to Compel Arbitration despite the existence of genuine issues of material facts on whether PricewaterhouseCoopers provided timely and adequate notice to Ms. Aldea-Tirado about the existence of the arbitration clause.

**III.    STATEMENT OF THE CASE**                                            **2-8**

IV.    STANDARD OF REVIEW                                    8

V.     SUMMARY OF ARGUMENTS                              9

VI.    ARGUMENT                                             10-30

VII.   CONCLUSION                                           30

VIII.  PRAYER FOR RELIEF                                    30

IX.    CERTIFICATE OF SERVICE                              31

       Certificate of Compliance

No. 22-1806

# TABLE OF AUTHORITIES

Pages

## <u>COURTS</u>

### Supreme Court

*AT&T Techs Inc. v. Comm'ns Workers of Am.,*
475 U.S. 643, 648 (1986);                                    15

*Buckeye Check Cashing Inc. v. Cardegna,*
546 U.S. 440, 443 (2006);                                    12

*Doctor's Assoc., Inc. v. Casarotto,*
517 U.S. 681, 687 (1996);                                    13

*First Options of Chicago, Inc. v. Kaplan,*
115 S.Ct. 1920 (1995);                                       14

*Garcia-Clara v. AIG Ins. Co., P.R.,*
No. 15cv1784 (CCC) (2016),
2016 WL 1261058 (DPR 2016);                                  17

*Granite Rock Co. v. Teamsters*,
561 U.S. 287, 299 (2010);                                    13

*Green Tree Financial Corp., v. Buzzle*,
123 S.Ct. 2402 (2003);                                       13

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
139 S. Ct. 524 (2019);                                       12

*Lamps Plus, Inc. v. Varela,*
139 S.Ct. 1407 (2019);                                       13

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Comp.,*    11
460 U.S. 1, 24 (1983);

*National Federation of the Blind v. The Container Store, Inc.,*    14, 24
640 F.3d 471 (1st Cir. 2011);

*Norcia v. Samsung Telecommunications America, Inc.,*    24
845 F.3d 1279 (9th Cir. 2017);

*Perry v. Thomas,*    14
482 US 483, 492 (1997);

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp,*    13
559 U.S. 662, 681 (2010),


**Court of Appeals for the First Circuit**

*AIR-CON, INC. v DAIKIN APPLIED LATIN AMERICA, LLC,*    8, 12, 28
21 F.4th 168, 176 (1st Cir. 2022);

*Anderson v. Liberty Lobby, Inc.,*    9
106 S.Ct. 2505 (1986);

*AT&T Mobility, LLC v. Concepcion,*    12, 13
563 U.S. 333, 346 (2011);

*Campbell v. Dynamics Gov't Sys. Corp.,*    9, 17, 20,
407 F.3d 546, 554-55 (1st Cir. 2005);    21, 22, 29

*Cole v. Maine.,*    10
2018 U.S. Dist. LEXIS 163857;

*Cortes-Irizarry v. Corp. Insular,*    11
111 F.3d 184, 187 (1st Cir. 1997);

*Hahn v. Sargent,*    11
523 F.2d 464 (1 st Cir. 1975);

*Greenburg v. P.R. Maritime Ship. Auth,*                                      11
835 F.2d 932, 936 (1st Cir. 1987);

*Martinez v. Colon*,                                                          8
54 F.3d 980, 983-84 (1st Cir. 1995);

*McCarthy v. Azure,*                                                          15
22 F.3d 351, 354-55 (1st Cir. 1994).

*Narrangasett Indian Tribe v. Warnick Auth.,*                                7
334 F.3d 161, 168 (1st Cir. 2003);

*Nat'l Fed'n of the Blind v. The Container Store, Inc.,*                      14, 24
904 F.3d 70, 80 (1st Cir. 2018);

*P.R. Elec. Power Auth. v. Action Refund,*                                    16
515 F.3d 57, 68 (1st Cir. 2008)

*Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.,*                            14, 15
913 F.3d 200, 207 (1st Cir. 2019).

*Skirchak v. Dynamics Research Corp.,*                                        29
508 F.3d 49, 58 (1st Cir. 2007);

*Soto-Fonalledas v. Ritz-Carlton San Juan Hotel, Spa & Casino,*              14
640 F.3d 471, 474 (1st Cir. 2011).

*Taite v. Bridgewater State University, Board of Trustees*,                   8
999 F.3d 86, 92-93 (1st Cir. 2021);

*Tolan v Cotton*,                                                             9
134 S.Ct. 1861, 1866 (2014);

*Trout v. Organizacion Mundial de Boxeo, Inc.,*                              16
965 F.3d 71 (1st Cir 2020);

*Vega-Rodriguez v. PR Tel.Co*,                                                11
110 F.3d 174, 178 (lst Cir. 1997)

**Other Circuits**

*Northwestern Nat'l Ins. v. Donovan,*                                    25
916 F.2d 372, 377 (7th Cir. 1990),

**U.S. District Court Puerto Rico**

*Cole v. Maine.,*                                                        10
 2018 U.S. Dist. LEXIS 163857

*Stereo Gema, Inc. v. Magnadyne Corp.,*                                  25
941 F.Supp 271, 274 (U.S.D.C.-P.R. 1994).

**Supreme Court of Puerto Rico**

*Aponte-Valentin, et. als v. Pfizer*,                                    15, 27
2021 T.S.P.R. 148;

*S.L.G. Mendez-Acevedo v. Nieves Rivera,*                                15
179 D.P.R. 359, 367 (2010);

*Producciones Tommy Muniz, Inc. v. Comité Organizador*                   15
*de los VIII Panamericanos (COPAN),*
112 D.P.R. 517 (1982).

**<u>STATUTES</u>**

**<u>Federal Statutes</u>**

28 U.S.C. §1331                                                          1

Federal Arbitration Act;                                                 12
9 U.S.C. § 4

Federal Rule of Civil Procedure 4(a)(1)(A)                              1

Federal Rules of Civil Procedure 56.                           11

Title VII of the Civil -Rights Act                             3
42 US.C. §2000-e

Pregnancy Discrimination Act of 1978                          3
42 US.C. §2000-e

National Historic Preservation Act,                           7
16 U.S.C.  § 470


**Puerto Rico Statutes**

Puerto Rico Law 100                                           3
29 L.P.R.A. § 146 *et. seq.*

Puerto Rico Law 69                                            3
29 L.P.R.A. § 1321-1341

Puerto Rico Working Mother's Act                              3
29 L.P.R.A. § 467-474

Art. 1213 of the Civil Code,                                  15
31 L.P.R.A. § 3391.

Law on Breastfeeding on Maternal Milk-Extraction Period       3
29 L.P.R.A. § 478-478h

Puerto Rico Law 115                                           3
29 L.P.R.A. § 194 *et. seq.*


**Other Sources**

Barbara T. Linderman & Paul Grossman,                         29
Employment Discrimination Law,  2988-2989 (4th ed. 2007)

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

No. 22-1806

### JENNIFER D. ALDEA-TIRADO
**Plaintiff - Appellant**
v.

### PRICEWATERHOUSECOOPERS LLP
**Appellee - Appellee**

### APPELLANT'S BRIEF

**TO THE HONORABLE COURT**:

NOW COMES Appellant Jennifer D. Aldea-Tirado through the undersigned attorney and most respectfully submits her Brief on Appeal:

I.     **Subject Matter Jurisdiction**

This Court has jurisdiction pursuant to 28 U.S.C. §1331. Rivera appeals the United States District Court for the District of Puerto Rico's September 30, 2022 Order and Judgment granting PricewaterhouseCooper's Motion to Compel Arbitration, Add. 2 and 3. On October 13, 2022, Aldea-Tirado filed Notice of Appeal pursuant to Federal Rule of Civil Procedure 4(a)(1)(A). Add. 4.

II.    **Statement of Issues**

A.     The district court erred by granting Motion to Compel Arbitration despite the existence of genuine issues of material facts on whether Ms. Aldea-Tirado consented to Arbitration;

B.     The district court erred by granting Motion to Compel Arbitration despite the existence of genuine issues of material facts on whether PricewaterhouseCoopers provided timely and adequate notice to Ms. Aldea-Tirado about the existence of the arbitration clause.

III.   **Statement of the Case:**

Appellant Aldea-Tirado is a licensed Certified Public Accountant and a licensed attorney. In May 2012, she graduated *Cum Laude* from the University of Puerto Rico where she obtained a B.A. in Business Administration with a major in accounting with a G.P.A. in her area of concentration of 3.9. By the end of May 2013, Aldea had taken the oath as a licensed Certified Public Accountant. Complaint, App. 2, pp. 3.

In 2013, Ms. Aldea-Tirado began her employment with the Appellee. The employment relationship between the Appellee and Ms. Aldea-Tirado was governed by the employment contract subscribed by the parties on October 9, 2013. The employment contract does not include an arbitration clause. App. 4, pp. 135-138.

From 2014 to 2018, while working full-time for the Appellee, Aldea attended the Law School of the University of Puerto Rico as part of the evening program. App. 2, pp. Aldea succeeded in obtaining her Juris Doctor and graduated *Magna Cum Laude* with a 3.79 G.P.A., passed the Puerto Rico Bar examinations and was admitted to practice the legal profession in February 2019. App. 2, pp. 3.

2

At all times relevant, Ms. Aldea-Tirado had been promoted by the Appellee to the position of Senior Associate with the Tax-International Assignment Services group – now Global Mobility Services. App 2, pp. 4.

On November 21, 2021, Ms. Aldea-Tirado filed her Complaint against her employer, PricewaterhouseCoopers, LLP, alleging that she had been discriminated against for reason of her gender and pregnancy pursuant to Title VII of the Civil Rights Act, 42 U.S.C.A. *§*.2000-e, the Pregnancy Discrimination Act of 1978 and asserted supplemental claims under the laws of Puerto Rico; specifically, Puerto Rico Working Mothers Act, 29 L.P.R.A. § 467-474, Law 100, 29 L.P.R.A §146 *et. seq.,* Law 69, 29 L.P.R.A. §1321-1341 and the Law on Breastfeeding on Maternal Milk-Extraction Period, 29 L.P.R.A. § 478-478h. Ms. Aldea-Tirado also claimed she had been the subject of illegal retaliation pursuant to both Title VII of the Civil Rights Act of 1964 and Puerto Rico anti-retaliation legislation, 29 L.P.R.A. § 115. App. 2, pp. 5-27.

On November 18, 2021, appellee's counsels forwarded the undersigned counsel a written communication stating that Ms. Aldea-Tirado had consented to an arbitration agreement. Counsels for the Appellee forwarded what they represented was the arbitration agreement notice that allegedly was sent to Ms. Aldea-Tirado. App. pp. 134, 139. On November 22, 2021, Ms. Aldea-Tirado expressly refuted the

appellee's contention and categorically denied having received the alleged email communication. App. pp. 143-144.

On January 3, 2022, PricewaterhouseCoopers, LLP, requested the district court to compel arbitration and stay the proceedings. App. 3, pp. 28-114. Appellee alleged that on March 31, 2014 it had notified Ms. Aldea-Tirado the arbitration agreement by sending it to the PwC email account "Jennifer Aldea Tirado/TLS/Pwc@American-US," and by first class mail. App. 3, p. 2, ¶¶ 2 and 3-4, p. 73.

Appellee also submitted documents in an effort to show that notice about the Arbitration Agreement was provided to PwC's employees through a *mass mailing* process. App. 3, pp. 84-85, 87, 89. According to PwC, it contracted the services of a third party, Heffler Claims Group, to provide "printing, mailing and other services in connection with the distribution of arbitration agreements to current PwC employees." App. 3, p.74.

On January 18, 2022, Ms. Aldea-Tirado opposed Appellee's request to compel arbitration and also presented her Opposition to Appellee's Statement of Facts. App. 4, pp. 115-145; App. 5, pp. 146-148. In support of her Opposition, Ms. Aldea-Tirado asserted under oath that she "was never notified by PwC that it had modified her employment contract after October 9, 2013," that she "had never received any written or verbal notification about the alleged modification of [her]

employment contract through the incorporation of Arbitration Agreement," and that the first time that she "was appraised about the alleged existence of an Arbitration Agreement was after PwC's legal representation submitted for my legal representation's review an alleged email with [her] name on it on which PwC purports to communicate the existence of a 'newly implemented policy' requiring employees to submit to arbitration of all employment disputes. App. 4, p. 131-133, at ¶¶ 5, 8, 9, 10, p. 134.

Ms. Aldea-Tirado further supported her opposition by showing that the email address used by PwC's third-party contractors was erroneous. In support, Ms. Aldea-Tirado submitted evidence of documents duly notified by the Appellee to Aldea on the same date as the purported notification of the Arbitration Agreement - March 31, 2014 – forwarded to Appellant's correct email address in Appellee's record; that is, jennifer.aldea.tirado@us.pwc.com and jenniferaldea@gmail.com. App. 4, pp. 133-134, 140.

Additionally, Aldea-Tirado argued and showed through documents on record that "[o]n its face, the email allegedly forwarded by PwC to [Aldea-Tirado] providing notice of the Arbitration Agreement fails to follow PwC's standard procedures and formats. That document fails to reflect the standard format utilized by PwC, fails to identify any sender, or subject matter as well as the PwC's format

logo and email structure." App. 4, pp 133 at § 14. Compare documents at App. pp. 139, 140, 141, 142.

Moreover, Aldea-Tirado argued and presented evidence to support that PwC's pattern and practice when notifying employees important employer policies through electronic means, it always required the employee to "Read and Acknowledge" receipt by pressing a "button" included in the communication. This is evident from the April 30, 2021 email where the appellee provided notice of PwC's "Puerto Rico Act 90" and the email communication dated August 2, 2021 where it provided employees notice of "PwC's Puerto Rico Workplace Prevention Policy." App. 4, pp. 141, 142.

Aldea-Tirado categorically asserted under oath that during her employment with PwC she had "never received notifications from PwC by mail regarding a modification of [her] employment contract." App. 4, p. 133 at ¶ 15.

On February 6, 2022, the appellee replied to Ms. Aldea-Tirado's Motion to Compel Arbitration [App. 6, pp. 149-146] and to her opposition to Appellee's Statement of Facts [App. 7, pp. 167-172].

On February 11, 2022, Ms. Aldea-Tirado presented Surreply. App. 8, pp. 173-180.

On March 2, 2022, Appellee presented a "Notice of Supplemental Authority" [App. 9, pp. 181-192] to which Ms. Aldea-Tirado opposed on March 4, 2022. App. 11, pp. 202-204.

On June 7, 2022, Ms. Aldea-Tirado submitted for the district court's consideration, supplemental authorities in support of her opposition to Appellee's Motion to Compel Arbitration. App. 12, pp. 205-268.

On September 30, 2022, the district court notified its Memorandum and Order granting Appellee's Motion to Compel Arbitration. Add. 2, pp. 3-6. It concluded that "Plaintiff's argument that the agreement was sent to the wrong email is belied by the record […] Moreover, Appellee has provided evidence that the arbitration agreement was also sent via first class mail to Plaintiff's address and never returned […] which gives rise to a rebuttable presumption … that a properly mailed document was received." Add. 2, p. 7. Inexplicably, the district court supported its decision on *Narragansett Indian Tribe v. Warnick Auth.,* 334 F.3d 161, 168 (1st Cir. 2003), a case which controversy that did not address express or tacit consent of Arbitration Agreements within the purview of the Federal Arbitration Act, but with the denial of Preliminary Injunctive relief under §106 of the National Historic Preservation Act. 16 U.S.C. § 470 (2000), where this Court made reference to the "common mailbox rule" that creates the rebuttable presumption that a "properly mailed document was received." *Id.* Based on *Narragasett*, the district court concluded

that Ms. Aldea-Tirado had not rebutted the presumption created by the "common mailbox rule" that she consented to the arbitration agreement sent by mail and not returned to the addressee.

On October 13, 2022, Ms. Aldea-Tirado filed Notice of Appeal. Add. 4, pp. 8-7.

## IV.    Standard of Review

The district court should have evaluated Appellee's Motion to Compel arbitration against a summary judgment standard to determine whether a genuine issue of fact exists regarding whether the parties agreed to arbitrate. Consequently, this Court reviews *de novo* the district court's legal conclusion on this issue. *AIR-CON, INC. v DAIKIN APPLIED LATIN AMERICA, LLC,* 21 F.4th 168, 176 (1st Cir. 2022). In its *de novo* review, this Court evaluate the record in the light most favorable to the non-moving party, Aldea-Tirado in this case. Summary judgment is appropriate only if the evidence taken in that light "fails to yield a trial worthy issue as to some material fact." *Martínez v. Colón*, 54 F.3d 980, 983-84 (1st Cir. 1995). The Court should affirm only if the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Taite v. Bridgewater State University, Board of Trustees*, 999 F.3d 86, 92-93 (1st Cir. 2021).

## V.    Summary of Arguments

The controversy at bar is whether an enforceable Arbitration Agreement was ever formed between the parties. Specifically, pursuant to the interplay of the Federal Arbitration Act and the contract law of Puerto Rico, the issue centers on whether PricewaterhouseCoopers met its burden of providing an adequate and sufficient notice that would have provided Ms. Aldea-Tirado, as a reasonable and prudent employee – "notice of the waiver to access the judicial system to litigate her employment discrimination claims." *Campbell v. Dynamics Gov't Sys. Corp.* 446 F. 3d 546, 555 (1st Cir. 2005).

Ms. Aldea-Tirado asserts that the record before the Court shows that a reasonable factfinder may conclude that PricewaterhouseCoopers failed to meet its burden and the district court failed to construe the record in the light most favorable to Ms. Aldea-Tirado, draw all inferences in her favor, restrain from weighing conflicting evidence and engage in credibility determinations. By failing to credit evidence that contradicted some of its key factual allegations, the district court improperly weigh[ed] the evidence" and resolved disputed issues in favor of the moving part." *Tolan v Cotton*, 134 S.Ct. 1861, 1866 (2014) citing *Anderson v. Liberty Lobby, Inc*. 106 S.Ct. 2505 (1986).

## VI.    Argument

The Order compelling arbitration should be reversed. A triable issue of fact remains whether Ms. Aldea-Tirado exercised "consent" to arbitrate her employment discrimination claims. She asserts she did not for want of adequate and timely notice of the Arbitration Agreement. The Order compelling arbitration results from the district court's failure to apply the summary judgment standards to Appellee's Motion to Compel Arbitration and thus, conclude as proven, the material factual issue of "notice" clearly disputed by the parties.

Thus, the district court erred in failing to consider the totality of the record, draw reasonable inferences in favor of the plaintiff, improperly weighed the evidence. The record shows that at a minimum, factual disputes exist as to whether PwC failed to notify the Arbitration Agreement to the correct email address on its own records; whether Appellee's *mass mailing* process of the Arbitration Agreement satisfy the notice requirement under the FAA and whether the application of the general "common mailbox" rule legally suffices to sustain a finding of "notice" under the FAA. The resolution of these issues, thus, squarely fall within the province of the jury and deem the district court's Order subject to reversal.

### A.    Summary Judgment Standard

The standards for summary judgment are well-established. See, for example, *Cole v. Maine*., 2018 U.S. Dist. LEXIS 163857; 2018 WL 4608478, at page 44

(D. Me. 2018) (Woodcock, J.) (internal citations and quotes omitted; emphasis supplied.) "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it has the potential to change the outcome of the suit. A dispute is "genuine" if a reasonable jury could resolve the point in favor of the nonmoving party. "Once the moving party has supplied this evidence the non-movant must produce specific facts, in suitable evidentiary form, to establish the presence of a trial worthy issue.

It is black letter law that "all reasonable inferences helpful to the party resisting summary judgment must be drawn. *Cortés-Irizarry v. Corp. Insular*, 111 F.3d 184, 187 (1st Cir. 1997); *Hahn v. Sargent*, 523 F.2d 464 (l st Cir. 1975), cert. den 425 U.S 904 (1976); *Greenburg v. P.R. Maritime Ship. Auth,* 835 F.2d 932, 936 (1st Cir. 1987) ("no room for credibility determinations, [or] for the measured weighing of conflicting evidence such as the trial process entails.") The court must assume all facts submitted by plaintiff and supported by competent evidence, adopting "her version of any contested facts which are material to the issues." *Vega-Rodriguez v. PR Tel.Co*, 110 F.3d 174, 178 (lst Cir. 1997) (emphasis supplied),

It is also black letter law that a party opposing summary judgment may submit an affidavit or declaration based on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify

on the matters stated. See, Fed. R. Civ. P. 56(c)(4). Therefore, Plaintiff's Declaration under Penalty of Perjury constitutes a legally valid factual foundation to oppose appellee's dispositive motion.

Pursuant to the summary judgment standards, the record must be construed in the light most favorable to Ms. Aldea-Tirado and draw all reasonable inferences in her favor. *Air-Con Inc. v. Daikin Applied Latin America,* No. 19-2248 (1st Cir. December 20, 2021). Under the FAA, PwC bore the burden of demonstrating that a valid and enforceable agreement to arbitrate exist between the parties. *Air-Con Inc. v. Daikin Applied Latin America,* No. 19-2248 (1st Cir. December 20, 2021).

### B.    The Federal Arbitration Act

Plaintiff concedes that, with the Federal Arbitration Act ("FAA"), Congress set a "liberal policy favoring arbitration." *AT&T Mobility, LLC v. Concepcion,* 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Comp. ,*460 U.S. 1, 24 (1983). See, 9 U.S.C. § 4. Courts, however, in deciding a motion to compel arbitration, must first determine whether an enforceable agreement to arbitrate exists. The courts respect arbitration as "a matter of contract" between the parties and doesn't allow courts to jump in when the parties agreed to keep the courts out of the mix, See, *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524 (2019). It "places arbitration agreements on equal footing as all other contracts." *Buckeye Check Cashing Inc. v. Cardegna,* 546 U.S. 440, 443 (2006),

which means that courts can invalidate arbitration agreements on the same "generally applicable contract defense []" grounds that would apply to all other contracts. *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)." *Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.,* 913 F.3d 200, 207 (1st Cir. 2019).

"Consent" is foundational FAA principle. "As a corollary to its contract-based philosophy, the FAA's "liberal policy" is only triggered when the parties actually agreed to arbitrate. "The first principle that underscores [the Supreme Court's] arbitration decisions is that arbitration is a matter of consent not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp,* 559 U.S. 662, 681 (2010); *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010); *Lamps Plus, Inc. v. Varela,* 139 S.Ct. 1407 (2019). It "does not require the parties to arbitrate when they have not agreed to do so. (…) So, the existence of an enforceable agreement is the first needed step to trigger the FAA's protective reach." (Quotations omitted). *Rivera-Colón," Id.*

The Supreme Court refused to infer consent when it comes to fundamental "gateway" questions such as "whether the parties have a valid arbitration agreement at all." See, *Green Tree Financial Corp., v. Buzzle*, 123 S.Ct. 2402 (2003). It refused to conclude that parties have agreed to arbitrate based on "silence or ambiguity" in their agreement, because "doing so might too often force an unwilling party to arbitrate a matter they reasonably would have through a judge, not an

13

arbitrator, would decide." *Lamps* at 1416-1417, citing *First Options of Chicago, Inc. v. Kaplan,* 115 S.Ct. 1920 (1995).

Thus, "a court should not compel arbitration unless and until it determines that the parties entered into a validly formed and legally enforceable agreement covering the underlying claims." *Nat'l Fed'n of the Blind v. The Container Store, Inc.,* 904 F.3d 70, 80 (1ˢᵗ Cir. 2018).

"Because arbitration is a creature of contract, 'principles of state contract law control the determination of whether a valid agreement to arbitrate exists." *Rivera-Colon, Id. at* 207-208. Thus, in this case, Puerto Rico contract law provides the legal framework in determining whether a binding and enforceable contract was created between the parties. Therefore, to determine the existence of a valid arbitration agreement pursuant the FAA the courts are called to apply the laws applicable to contracts within the State or jurisdiction. *See, Perry v. Thomas,* 482 US 483, 492 (1997). PricewaterhouseCoopers as the party seeking to compel arbitration, bears the burden of clearing that hurdle and "demonstrat[ing] that a valid agreement to arbitrate exists." *Rivera-Colon v. AT&T Mobility Puerto Rico,* 913 F.3d 200, 207 (1ˢᵗ Cir. 2019) citing *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel, Spa & Casino,* 640 F.3d 471, 474 (1st Cir. 2011).

The Supreme Court of Puerto Rico recently affirmed the strong public policy that favors arbitration but expressly underscored that its application depends on

whether the parties have so agreed and the manner in which the agreement was perfected. *See, Aponte-Valentin, et. als v. Pfizer* , 2021 T.S.P.R. 148. Thus, the Court ruled, that a party shall not be compelled to submit to arbitration if it has not consented to participate in such procedure. *See, S.L.G. Mendez-Acevedo v. Nieves Rivera,* 179 D.P.R. 359, 367 (2010).

To form a valid contract under Puerto Rico law, both parties must consent to it. See, P.R Laws Ann. Tit. 31, Section 3391. That consent is shown by "the occurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." 31 L.P.R.A. 3401. "[A]cceptance of an offer …is the normal procedure to perfect a contract." *Rivera-Colon v. AT&T, SUPRA AT, 209 citing Producciones Tommy Muniz, Inc. v. Comité Organizador de los VIII Panamericanos (COPAN),* 112 D.P.R. 517 (1982). Therefore, for a contract to be valid it should contain and reflect the consent of the parties to the contract, the object of the contractual matter and the cause of the obligation that is established." Art. 1213 of the Civil Code, 31 L.P.R.A. 3391.

"Consent" is one of the essential elements in a contract the contractual element in controversy in this case. *McCarthy v. Azure,* 22F.3d 351, 354-55 (1ˢᵗ Cir. 1994). Therefore, a party cannot be required to submit to arbitration any dispute which she or it has not agreed to submit. *AT&T Techs Inc. v. Comm'ns Workers of Am.,* 475 U.S. 643, 648 ((1986) (internal quotations omitted).

15

It is undisputable that, it is pre-requisite to the voluntary exercise of consent, that the party must have been put on "reasonable notice." Ms. Aldea contends that no agreement -tacit or express- was perfected as the appellee failed to provide due notice of the agreement. Under the circumstances of this case, to pretend otherwise is unconscionable.

Courts may hold an agreement is "unconscionable" and, thus unenforceable if the process isn't seen as being "fair." A contract is unconscionable when is unfair or oppressive to one party in a way that suggests abuse during its formation...or holds terms so extremely unjust or overwhelmingly one-sided in favor of a party who has the superior bargaining power that are contrary to good conscience." *Trout v. Organizacion Mundial de Boxeo, Inc.,* 965 F.3d 71 (1st Cir 2020).

The doctrine of unconscionability has been recognized under the laws of Puerto Rico. In *P.R. Elec. Power Auth. v. Action Refund,* 515 F.3d 57, 68 (1st Cir. 2008), the Court expressly stated that Puerto Rico law recognizes unconscionability as a basis "for judicial intervention when a contract exhibits an excessively onerous quality that reaches the point of bad faith and defeats those rules of collective conduct that must be observed by every honest and loyal conscience."

The employer must still ensure that the arbitration agreement and the procedures thereunder conform to statutory regulatory and decisional caselaw regarding notice and due process. The test to determine what notice is adequate to

bind employees to mandatory arbitration is objective: the sufficiency of the notice turns on whether, under the totality of the circumstances, the employer's communication would have provided a reasonable prudent employee notice of the waiver [of the right to proceed in a judicial forum." *See, Campbell* v. *General Dynamics Government System Corp.*, 407 F.3d 546, 554-55 (1st Cir. 2005). The analysis of whether the facts meet this objective standard is performed on a case-by-case basis. The factors to consider include the method of communication, the context and the content of the communication. *Id.*

In *Campbell*, the First Circuit determined that the arbitration of a claim under the Americans with Disabilities Act was appropriate **only** when the communication of the agreement afforded minimally sufficient notice of waiver of the right to proceed in a judicial forum. *Id. [Emphasis ours].*

In contrast to the facts of the case at bar, in *Garcia-Clara v. AIG Ins. Co., P.R.,* No. 15cv1784 (CCC) (2016), 2016 WL 1261058 (DPR 2016), the district court ruled in favor of the appellee and sent plaintiff to arbitration because she had received three consecutive explicit emails providing notice of the existence of the arbitration agreement, the plaintiff never submitted her own affidavit stating that she had not received notification of the EDR program and never contested the authenticity of the emails.

17

Applying the aforementioned principles and framework to this case, it is clear that the Appellee never afforded Ms. Aldea "the minimal level of notice" sufficient to apprise her, not only that she may be bound by an allegedly existing arbitration agreement, but of the existence of the arbitration agreement itself.

To begin, the method of Appellee's communication of the existence of the Arbitration Agreement was ineffectual and futile, at best. Appellee first represented to the undersigned attorney that notice about the existence of the Arbitration Agreement had been effectuated to Ms. Aldea via email. According to Appellee's counsel's representation, PwC had effectuated the notification by forwarding the alleged Arbitration Agreement to the following electronic address: Jennifer Aldea Tirado/US/TLS/PwC@Americas-US.

Upon review of Appellee's counsel's communication, the undersigned responded that the documents submitted by the appellee in an attempt to support the existence of a binding arbitration agreement were procedurally and substantively unconscionable.

For the first time, and in support of its Motion to Compel Arbitration, the Appellee set forth a convoluted factual scenario in which it portrays an alleged notice procedure – performed by a third party contractor - that include sending emails - without providing for acknowledgment of receipt – followed by the use of the postal service by allegedly mailing the document by first class mail, again, without taking

18

any measures to acknowledge receipt. From its face, the document submitted by the Appellee shows that if it forwarded the notification of the alleged Arbitration Agreement to Ms. Aldea via electronic address, it did it to the wrong address. Appellee knew -or certainly, should have known - that electronic address used for Ms. Aldea was erroneous.

To add to the mix, it is imperative for this Honorable Court to be apprised of the fact that on March 31, 2014, the same date Appellee identified as the effectuating notice, the Appellee forwarded to Ms. Aldea and Ms. Aldea received, communications from her employer. These communications were forwarded by the Appellee through the use of electronic mail, as it is the only manner in which PwC communicates with the plaintiff. Appellee's communications reached Ms. Aldea without any inconvenience as they were forwarded to her correct electronic addresses which are in possession of appellee's records and knowledge. To wit, jennifer.aldea.tirado@us.pwc.com and jenniferaldea@gmail.com.

Had the appellee intended to notify Ms. Aldea about the alleged existence of a document of such heightened significance as an Arbitration Agreement that results in a substantial modification of the terms and conditions of its employee's employment contract, it would have forwarded the document to the correct electronic address; an address that has been and continues to be readily available and customarily used by PwC to communicate with Ms. Aldea. It is reasonable to assume

19

that a worldwide corporation such as PwC would have engaged in effective conduct to ensure that its employees in general, and Ms. Aldea in particular, had in fact received the document, had an opportunity to consult with counsel and raise any concerns with the employer and take measures to guarantee that the employee's decision – to consent or reject the proposed modification of the employment contract - was knowing and voluntary. But PwC did not.

The sufficiency of the notice turns on whether, under the totality of the circumstances, the employer's communication would have provided a reasonably prudent employee notice of the waiver to access the judicial system to litigate her employment discrimination claims. *Campbell v. Dynamics Gov't Sys. Corp.*, 446 F.3d 546, 555 (1st Cir. 2005). The Court's decision in *Campbell* adequately discussed the legal analysis applicable to a factual scenario that may be both contrasted and analogized with the circumstances in the instant case.

In *Campbell,* the Court upheld the district court's determination that the employer's efforts to notify the plaintiff about the existence of a binding arbitration policy were insufficient to extinguish the right to a judicial forum vis-à-vis her employment discrimination claims. Thus, in *Campbell*, as in this case, the adequacy of notice was dispositive. In *Campbell*, like in this case, the employer sent mass emails to its employees with the intention to provide notice of the newly imposed arbitration clause. The Court, in analyzing the adequacy and sufficiency of the notice

under the FAA, focused on the characteristics of the notification and declared that "a mass email message, without more, fails to constitute the minimal level of notice required to arbitrate [civil rights] claims. The employer can prevail in its demands for arbitration **only if** it can establish that the provision for mandatory arbitration is part of a valid contract within the purview of the FAA." *Campbell at 554-55.*

The Court in *Campbell* ruled that Dynamics had failed to meet "the most abecedarian" requirement: that a valid agreement to arbitrate exists. That is, the Court ruled against the enforceability of the Arbitration Clause even when Dynamics, unlike PwC, set up a tracking log to monitor whether and if its employees opened the email and also included a link for the employee to peruse either, an included Brochure and Handbook on the Policy. The Court reasoned that Dynamics – just like PwC – did not bother to elicit the employee that she had read the email (much less the Policy) or that she had become aware that staying in her employment would become binding acceptance of a new contractual term replacing court access to arbitration.

The Court's decision in Campbell against the appellee employer was significantly based on similar circumstances of the instant case. That is, the Court examined whether the email used by the employer was typical in comparison to other significant communications transmitted to the plaintiff over the course of her employment, especially those that pertained to personnel policies that introduced a

contractual amendment that was to become a condition of continued employment. The Court in *Campbell* ruled that the mass email failed to meet this standard. "This defect weights all the more heavily because it could so easily have been remedied."

As applied to this case, PwC could have easily set this particular communication as all others that concerned personnel policy notifications: first, send it to the correct email address;  to require a response to the email; to acknowledge receipt; to provide the employee an opportunity to acknowledge having read the policy. But PwC, like *Dynamics*, opted for a "no response required format." Signing an acknowledgement or, in the more modern context already used by PwC, clicking a box on a computer screen are acts associated with entering into a contract. "The lack of that level of inexpensively obtainable formality" makes it impossible for PwC, under the particular circumstances of this case, meet its burden pursuant to the summary judgment standard, that no genuine issue of material facts exists as to whether "minimal level of notice" sufficient to conclude that an enforceable arbitration agreement exists.

In theory, there is nothing objectionable to the use of emails as a means of communication. However, in this case, unconscionability of the arbitration agreement arises from the following undisputed facts:

1.   PwC's practice was to notify Aldea-Tirado of implemented policies that affected her rights as an employee through the email addresses on

record; *See,* to *Plaintiff's Motion in Opposition to Motion to Compel,* Exhibits 4,5,6,7.

**2.**    PwC presented no evidence that it had ever implemented a system - other than the one identified before – to notify its employees of personnel policies. Specifically, Appellee failed to provide evidence that it routinely communicated policy changes, much less a significant one involving waiver of rights of access to the judicial system, by the use of the LOTUS program;

3.    The document submitted by PwC in its Reply [Attachment A to Declaration of Brian T. Fox] expressly shows that PwC had designated as Aldea-Tirado's Internet Address "jennifer.aldea.tirado@us.pwc.com" and **NOT** Jennifer Aldea Tirado/US/TLS/PwC@Americas-US;

4.    Appellee's failure to require a response departs from the standard operational procedure utilized by PwC when communicating personnel policy changes; *See, Skirchak, supra.*

Furthermore, it begs the question whether it is reasonable to believe that PwC, if the reason for the appellee to allegedly send the Arbitration Agreement by mail was to secure its notification it could have done so by forwarding the document via certified mail. It did not do so. To the contrary, PwC sustains that it notified the Arbitration Agreement through a *mass mailing* process effectuated by a third party.

More importantly, neither the district court nor the Appellee in any of its multiple Motions, referred to any judicial case or authoritative legal source to sustain the conclusion that, under the rigors demanded by the FAA or Puerto Rico's contract law, the "common law mailbox" rule is sufficient to support a finding of either

23

"sufficient notice" or "consent" to arbitrate; consent to relinquish a party's right to access to the judicial system to resolve employment discrimination disputes under the FAA. Should the district court's and Appellee's proposition be deemed correct, an employer would satisfy its burden to show "consent" - express or tacit- by merely asserting that it mailed the Arbitration Agreement to the employee's address and was never returned. Certainly, neither the FAA nor Puerto Rico's contract law or either's interpretative caselaw construe the "notice" requirement - sufficient to support an inference of consent - so loosely and liberally. This conclusion finds no support in the caselaw and runs counter to the very purpose of the "notice" requirement and the burden imposed upon employers by the FAA and the Puerto Rico contract law when intending to enforce an arbitration agreement. To the contrary, Courts have consistently ruled against the enforceability of Arbitration Agreements where the proponent fails to show it provided reasonable notice; when the contract has been presented in a manner that would make it unlikely the that it would have been noticed. *See, National Federation of the Blind v. The Container Store, Inc.,* 640 F.3d 471 (1st Cir. 2011); *Norcia v. Samsung Telecommunications America, Inc.,* 845 F.3d 1279 (9th Cir. 2017). Both, the alleged unacknowledged email and the first-class mail without evidence of receipt render these attempts meaningless for purposes of the enforceability of the Arbitration Agreement.

Moreover, the district court erred when it concluded that Ms. Aldea-Tirado failed to rebut the common law "mailbox rule." A review of the record shows that Ms. Aldea-Tirado categorically denied ever receiving notice about the Arbitration Agreement, in writing or verbally. App. 4.

Thus, under both purported notification scenarios the district court erred in concluding that PwC effectuated minimal notification to render the Arbitration Agreement enforceable. The resolution of these issues entails the weighing of conflicting evidence and require credibility assessments; exercises that are beyond the scope of summary judgment and within the exclusive realm of the jury.

Here, Ms. Aldea was deprived of the opportunity to learn about the existence of the Arbitration Agreement, to read and understand the contract and determine whether the terms at issue were unreasonable or acceptable. *See, Northwestern Nat'l Ins. v. Donovan,* 916 F.2d 372, 377 (7th Cir. 1990), quoted in *Stereo Gema, Inc. v. Magnadyne Corp.,* 941 F.Supp 271, 274 (U.S.D.C P.R. 1994).

PwC's conduct should be compared to the employer in *Rivera-Colon v ATT Mobility,* 913 F.3d 200 (2019). There the court ruled in favor of the enforceability of the Arbitration Agreement where the employer had sent an email on the company's email account with unique username and password, informing about the proposed changes in the employment contract. In that case, the employer provided

the employee the opportunity to acknowledge having read the agreement by providing a link to secure acknowledgment.

PwC's pattern and practice when informing its employees of employment related policies, mirror those described in *Rivera-Colon* and radically diverts from the methods of communications it represents to the court used in the case of allegedly notifying to the employees in general and to Ms. Aldea in specific, the Arbitration Agreement. Consistent with its practice, it notified Ms. Aldea through her email address jennifer.aldea.tirado@pwc.com, "a copy of Act 90 and a related employer notice." It further provided a link to acknowledge receipt of the document and a telephone number to call in case she needed further assistance with the matter.

PwC followed the same procedure when notifying "Puerto Rico Workplace Harassment Policy." The notification was forwarded to her correct email address on record with PwC and provided a link to acknowledge receipt and a telephone number to seek assistance.

PwC's failure to follow its own established notice procedures weigh against the conclusion that it effectuated the notice required to infer "consent" and sustain the enforceability of the Arbitration Agreement. That PwC pretends to enforce an Arbitration Agreement where it repeatedly and unjustifiably failed to meet minimum rigors of its duty to provide the plaintiff with reasonable notice offends the most basic tenets of fair dealing and good faith. The obscurity of the "notice" mechanisms

26

allegedly used by PwC in clear contravention to its own practice, the failure to require a response, its alleged reliance on the postal service when it had possession of Ms. Aldea's correct electronic address; its failure to secure a confirmation of receipt of the alleged mailed correspondence clearly underscore PwC's failure to provide not only adequate and fair notice but notice at all. Whether it was the intention of PwC to hide the Arbitration Agreement is of no significance. The effect, however, was the same; the Arbitration Agreement was kept hidden from Ms. Aldea until after this case was filed. That the district court concluded in favor of PwC notwithstanding the conflicting evidence supports Ms. Aldea-Tirado's request for reversal.

PwC's conduct should be compared to the appellees in the Supreme Court of Puerto Rico case *Aponte Valentin, et. als v. Pfizer Pharmaceuticals, Inc.,* a case decided by the Supreme Court of Puerto Rico on November 21, 2021. *Aponte Valentin* did not concern the issue at bar, whether reasonable notice was afforded to Ms. Aldea sufficient to find "consent." To the contrary, in the second and third pages of the Court's decision it becomes pellucidly clear that *Pfizer* did what PwC did not. *Pfizer* notified all employees via electronic mail about the existence of the Arbitration Agreement, sent links to access the Agreement, and a list of questions and responses, a training module and a link to acknowledge receipt. Under these circumstances, the Supreme Court concluded that the plaintiff's continued

27

employment after receiving notification of the Arbitration Agreement constituted tacit "consent" to arbitrate.

Thus, the district court erred in compelling arbitration given that the record shows that PwC failed to meet the Summary Judgment standard set forth in Federal Rule of Civil Procedure 56 and its interpretative caselaw that mandate the moving party to bear the burden of showing that no material issue of facts exist regarding the enforceability, pursuant to contract law, of the Arbitration Agreement. The district court impermissibly placed the burden on the Appellee to disprove the existence of an enforceable arbitration agreement. The First Circuit in *Air-Con, Inc. v. Daikin Applied Latin America, LLC.,* 19-2248, 2021 U.S. App. LEXIS 37515 (1st Cir. Dec. 21, 2021) reversed the District Court's Order Compelling to Arbitrate because it "impermissibly put the burden of disproving the existence of a valid arbitration agreement on [non-moving Plaintiff]…[The] substantive law on enforceability of arbitration agreements puts the burden on the party moving to compel arbitration to show it is entitled to that outcome…Thus, the relevant issue is not whether [Jennifer Aldea-Tirado] "failed to show" the absence of an agreement. Rather [PwC] had to affirmatively demonstrate the existence of a binding agreement to arbitrate." *Id.*

"Considering the ability to control the level of notice and taking into account the significance of the rights [PwC] was attempting have its employees waive, it is

clear that [PwC] should bear the risk of ignorance. It was [PwC] who not only drafted the policy but determined the way would be disseminated. It was [PwC] who could have cheaply and easily announced the change in a way that would ensure that [Aldea-Tirado] knew." Thus, "the risk of ignorance must fall on [PwC]." *Campbell v. Dynamics Gov't Sys. Corp.*, 321 F. Supp.2d 142 (D.Ma. 2004), aff'd *Campbell v. Dynamics Gov't Sys. Corp.*, 446 F.3d 546 (1st Cir. 2005). The district court's decision favoring arbitration given the totality of circumstances in this case runs counter to the above stated rule of law and is therefore, subject to reversal.

Whether Ms. Aldea agreed -tacitly or otherwise- to "arbitrate all claims or arising out of "her employment contract" is subject to a preliminary finding that PwC met its burden of proving that it provided timely and adequate notice. *See,* App. 4, p. 133 at ¶ 15; *Campbell, supra.*

"The enforceability of employer-imposed arbitration agreements depends on the governing state law and the facts of the individual cases including the prominence and clarity of the arbitration agreement, whether the employee acknowledged the arbitration requirement, whether the employee had a 'meaningful choice' and whether the employee was well educated." Barbara T. Linderman & Paul Grossman, Employment Discrimination Law, 2988-2989 (4th ed. 2007) cited in *Skirchak v. Dynamics Research Corp.,* 508 F.3d 49, 58 (1st Cir. 2007).

Pursuant to the facts in controversy, the applicable federal and Puerto Rico laws, Ms. Aldea-Tirado respectfully submits that the attempted enforcement of the arbitration agreement is not the product of her 'meaningful choice'' nor a reflection of any kind of "acknowledgment" on her part. Its enforcement is unconscionable.

For the above stated reasons, Jennifer Aldea-Tirado respectfully requests that this Honorable Court order the reversal of the district court's Order compelling arbitration.

## VII.    Conclusion

The district court's Order compelling arbitration is subject to reversal. The existence of material issues of fact regarding notice and consent render the enforceability of an arbitration agreement a matter to be resolved by the jury and beyond the realm of summary disposition by the court.

## VIII.    Prayer for Relief

For the above stated reasons, Ms. Jennifer Aldea-Tirado most respectfully requests that this Honorable Court affirm her right to submit her gender and pregnancy discrimination claims to the Jury in a trial on the merits within the U.S. District Court by reversing the Order compelling her to submit her claims to arbitration.

## IX.   CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the Brief and Appendix was notified to counsels for PricewaterhouseCoopers, LLP, Pedro J. Torres-Diaz and Ana B. Rosado-Fontanes through automatic electronic notification of the CM/ECF system.

In San Juan, Puerto Rico this 12th day of December 2022.

*S/Maricarmen Almodovar-Diaz*
Maricarmen Almodovar-Diaz, Esq.
U.S.C.A. No. 5970
U.S.D.C. P.R.No.:204406
P.O. Box 3871
San Juan, Puerto Rico 00936
Tel. 787-233-3306
malmodovarlaw@gmail.com

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

No. 22-1806

## JENNIFER D. ALDEA-TIRADO
**Plaintiff - Appellant**

v.

## PRICEWATERHOUSE COOPERS LLP
**Defendant - Appellee**

_____

## ADDENDUM

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

No. 22-1806

## JENNIFER D. ALDEA-TIRADO
**Plaintiff - Appellant**

v.

## PRICEWATERHOUSECOOPERS LLP
**Defendant - Appellee**

## INDEX TO ADDENDUM

| Document | Pages |
|---|---|
| 1.  Docket | 1 – 2 |
| 2.  Memorandum and Order | 3 – 6 |
| 3.  Judgment | 7 |
| 4.  Notice of Appeal | 8 - 9 |

APPEAL,CASECLOSED

# United States District Court
## District of Puerto Rico (San Juan)
## CIVIL DOCKET FOR CASE #: <u>3:21−cv−01525−JAG</u>

Aldea−Tirado v. PricewaterhouseCoopers, LLP
Assigned to: Judge Jay A. Garcia−Gregory
Demand: $850,000
 Case in other court:  22−01806
Cause: 28:451 Employment Discrimination

Date Filed: 11/02/2021
Date Terminated: 10/07/2022
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Jennifer D. Aldea−Tirado**                    represented by    **Maricarmen Almodovar−Diaz**
P.O. Box 363871
San Juan, PR 00936−3871
787−233−3306
Fax: 787−946−1172
Email: malmodovarlaw@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**PricewaterhouseCoopers, LLP**            represented by    **Ana B. Rosado−Frontanes**
Jackson Lewis LLC
American International Plaza
250 Munoz Rivera Avenue
Suite 404
San Juan, PR 00918
787−522−7305
Email: Ana.Rosado@jacksonlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maralyssa Alvarez−Sanchez**
Bold LLC
City View Plaza II
48 Road 165
Suite 6000
Guaynabo, PR 00968
787−529−4006
Email: maralyssa.alvarez@bold.com
*TERMINATED: 06/06/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pedro J. Torres−Diaz**
Jackson Lewis P.C.
One Biscayne Tower, Suite 3500

1

Two South Biscayne Boulevard
Miami, FL 33131
305−577−7600
Fax: 305−373−4466
Email: Pedro.Torres−Diaz@jacksonlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Select all / clear | Docket Text |
|---|---|---|---|
| 09/30/2022 | 27 | MEMORANDUM AND ORDER granting 7 MOTION to Compel Arbitration. Judgment shall be entered accordingly.  Signed by Judge Jay A. Garcia−Gregory on 9/30/2022. (MQ) (Entered: 10/07/2022) | |
| 10/07/2022 | 28 | JUDGMENT dismissing *without prejudice* Plaintiff's case.  Signed by Judge Jay A. Garcia−Gregory on 10/7/2022. (MQ) (Entered: 10/07/2022) | |
| 10/13/2022 | 30 | NOTICE OF APPEAL as to 28 Judgment, 27 Memorandum & Opinion by Jennifer D. Aldea−Tirado. Filing fee $505, receipt number APRDC−7948496.  **NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/efiling.htm** (Almodovar−Diaz, Maricarmen) Modified on 10/19/2022 to link dockets 27 & 28, add filing fee receipt number (gav). (Entered: 10/13/2022) | |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

JENNIFER D. ALDEA-TIRADO,

    **Plaintiff,**

        v.                      CIVIL NO. 21-1525 (JAG)

PRICEWATERHOUSECOOPERS, LLP,

    **Defendant.**

### MEMORANDUM AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is Defendant PricewaterhouseCoopers, LLP's ("Defendant") Motion to Compel Arbitration, Docket No. 7; Plaintiff Jennifer D. Aldea-Tirado's ("Plaintiff") Opposition, Docket No. 8; Defendant's Reply, Docket No. 15; and Plaintiff's Sur-Reply, Docket No. 17. For the reasons stated below, the Motion to Compel Arbitration is hereby **GRANTED**.

The Federal Arbitration Act provides that an agreement "to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in" the statute. 9 U.S.C. § 2. Once this has been established, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

Defendant has established "that a valid agreement to arbitrate exists, that [it] is entitled to invoke the arbitration [agreement], that [Plaintiff] is bound by that [agreement], and that the

claim[s] asserted come[] within the clause's scope." *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003). Plaintiff does not dispute that the claims asserted come within the scope of the clause. The only disputed issue is whether Plaintiff consented to the arbitration agreement and, thus, whether she is bound by a valid agreement to arbitrate. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[T]he question of whether the parties agreed to arbitrate is to be decided by the court.") (citations omitted).

The record shows that Plaintiff tacitly consented to the agreement. The arbitration agreement was sent to Plaintiff via email and first-class mail on March 31, 2014. Docket Nos. 7-1; 7-2; 7-4; *see also Campbell v. Gen. Dynamics Gov't Sys.* Corp., 407 F.3d 546, 555 (1st Cir. 2005) (noting that "an e-mail, properly couched, can be an appropriate medium for forming an arbitration agreement."). The cover page of both the email and first-class mail stated, in bold letters, that Plaintiff's continued employment after July 1, 2014 would be construed as acceptance of the terms of the arbitration agreement.[1] *See Aponte v. Pfizer Pharms. LLC*, 2021 WL 5513112 (P.R. Nov. 10, 2021) ("[T]he FAA does not require the signature of the parties to the agreement for its validity.") (certified translation at Docket No. 7-6). Plaintiff continued working after July 2014 and, thus, consented to be bound by the agreement to arbitrate "all disputes, controversies and claims

---

[1] Specifically, the cover page stated, in bold letters, that

> Under the agreement, you and the firm mutually waive the right to a trial before a judge or jury in court in favor of arbitration for all covered claims . . . The agreement will become effective on July 1, 2014, and your continued employment with the firm on or after that date will indicate that you have accepted the terms of the agreement. Please note that your signature is NOT required for acceptance of the agreement. You will be deemed to have accepted, and will be bound by, the agreement if you continue your employment with the firm on or after July 1, 2014.

Docket Nos. 7-3; 7-4 at 4.

CIVIL NO. 21-1525 (JAG)                                                                 3

relating to or arising out of [her] employment agreement." Docket No. 7-4 at 5; *see Aponte*, 2021
WL 5513112 ("[T]he determining element of consent in this case was the conduct of the
respondents when they remained in employment [] sixty (60) days after being notified of the
terms of the Agreement."); *Rivera-Colon v. AT&T Mobility P.R., Inc.*, 913 F.3d 200, 211 (1st Cir. 2019)
(noting that "silence can operate as acceptance [w]here the offeror has stated or given the offeree
reason to understand that assent may be manifested by silence or inaction, and the offeree in
remaining silent and inactive intends to accept the offer.") (cleaned up); *see also Soto v. State Indus.
Prod., Inc.*, 642 F.3d 67, 74-76 (1st Cir. 2011) (finding that continued employment and a bilateral
agreement to arbitrate both constitute valid consideration for an arbitration agreement).

Plaintiff's argument that the agreement was sent to the wrong email is belied by the record.
Docket No. 12-2 at 3. Moreover, Defendant has provided evidence that the arbitration agreement
was also sent via first class mail to Plaintiff's address and never returned, Docket No. 7-4, which
"gives rise to a rebuttable presumption . . . that a properly-mailed document was received."
*Narragansett Indian Tribe v. Warwick Sewer Auth.*, 334 F.3d 161, 168 (1st Cir. 2003). Plaintiff has not
rebutted this presumption. She does not claim that the letter was sent to the wrong address or
that Defendant did not send the letter via first class mail. Nor has she cited any support for the
proposition that enforcement of an arbitration agreement requires acknowledgment of receipt.

Because Plaintiff was adequately notified of the agreement and consented through her
continued employment, Defendant has established that a valid arbitration agreement exists, that
it can invoke the agreement, and that Plaintiff is bound by the agreement.

Moreover, Plaintiff has failed to establish unconscionability as a basis to find the
agreement unenforceable. The email and first-class mail, both sent to the correct addresses and
not returned as undeliverable, provided fair notice of the terms of the agreement and that

CIVIL NO. 21-1525 (JAG)                                                          4

continued employment would be construed as consent. The cover letters and the arbitration

agreement stated, in bold letters, that under the agreement Plaintiff and Defendant both waived

their right to trial in favor of arbitration, thereby providing notice of the waiver of rights. Docket

Nos. 7-3; 7-4 at 4, 5. Plaintiff was given 60 days to review and consider the agreement, was not

barred from discussing the agreement with an attorney, was not threatened with termination or

other adverse employment action if she did not accept the agreement, was explicitly told that the

communication contained an "Important Legal Document Affecting Your Rights," and received a

copy of the agreement via two delivery methods.

 For these reasons and considering the strong policy favoring arbitration under both federal

and state law, Plaintiff's claims are hereby **DISMISSED WITHOUT PREJUDICE** and the Parties

are **ORDERED** to arbitrate these claims in accordance with the Arbitration Agreement, Docket

No. 7-1. Judgment shall be entered accordingly.

 IT IS SO ORDERED.

 In San Juan, Puerto Rico, this Friday, September 30, 2022.


       s/ Jay A. Garcia-Gregory
       JAY A. GARCIA-GREGORY
       United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JENNIFER D. ALDEA-TIRADO,

    **Plaintiff,**

        v.

PRICEWATERHOUSECOOPERS, LLP,

    **Defendant.**

**CIVIL NO.** 21-1525(JAG)

## JUDGMENT

        Pursuant to this Court's Memorandum and Order, Docket No. 27, Judgment is hereby entered DISMISSING WITHOUT PREJUDICE Plaintiff's case and ORDERING the Parties to submit these claims to arbitration. The case is now closed for statistical purposes.

IT IS SO ORDERED.

In San Juan, Puerto Rico this Friday, October 7, 2022.

                                s/ Jay A. Garcia-Gregory
                                JAY A. GARCIA-GREGORY
                                U.S. DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JENNIFER D. ALDEA-TIRADO | Case No.:  21-cv-01525 (JAG) |
| Plaintiff | |
| v. | |
| PricewaterhouseCoopers  LLP | |
| Defendant | Title VII: Employment Discrimination Retaliation |

**NOTICE OF APPEAL**

**TO THE HONORABLE COURT**:

Notice is hereby given that, Plaintiff Jennifer D. Aldea-Tirado hereby appeals from the Judgment entered in the above-entitled action on October 7, 2022.  DE 27, 28.

**I HEREBY CERTIFY** that the foregoing document was filed with the Clerk of the Court using CM/ECF system, which will automatically send notification of such filing to counsel of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 13th day of October, 2022.

S/ *Maricarmen Almodovar-Diaz*
Maricarmen Almodovar-Diaz
USDC-PR: 204406
P.O. Box 363871
San Juan, PR 00936-3871
787-233-3306
Email: malmodovarlaw@gmail.com

## Certificate of Compliance With Type-Volume Limit

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

   1.  This document complies with the Fed. R. App. P.
because, excluding the parts of the document exempted by [please select]

   ☑ this document contains __6830__ words, **or**

   ☐ this brief uses a monospaced typeface and contains _____ lines of text.

   2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☐ this document has been prepared in a proportionally spaced typeface using
_____ in
_____, **or**

   ☑ this document has been prepared in a monospaced typeface using
Times New Roman_____ with
14 pts._____.

(s) Maricarmen Almodovar-Diaz

Attorney for  Appellant_____

Dated:  December 12, 2022_____