No. 22-1806

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

JENNIFER D. ALDEA-TIRADO,

*Plaintiff-Appellant,*

v.

PRICEWATERHOUSECOOPERS, LLP,

*Defendant-Appellee.*

On Appeal From The United States District Court
For The District Of Puerto Rico (No. 21-1525)

## RESPONSE BRIEF FOR DEFENDANT-APPELLEE
## PRICEWATERHOUSECOOPERS LLP

Pedro J. Torres-Díaz
Ana B. Rosado-Frontanés
JACKSON LEWIS LLC
American International Plaza, Suite 404
250 Muñoz Rivera Avenue
San Juan, PR  00918
(787) 522-7305
Pedro.Torres-Diaz@jacksonlewis.com
Ana.Rosado@jacksonlewis.com

Jason C. Schwartz
Jacob T. Spencer
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC  20036
(202) 955-8500
jschwartz@gibsondunn.com
jspencer@gibsondunn.com

*Counsel for Defendant-Appellee PricewaterhouseCoopers LLP*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, PricewaterhouseCoopers LLP ("PwC") states that it has no parent corporation and that no publicly held corporation owns any PwC stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................... i

REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD ..................... vii

INTRODUCTION ...............................................................................1

JURISDICTIONAL STATEMENT ...........................................................2

STATEMENT OF THE ISSUE.................................................................2

STATEMENT OF THE CASE...................................................................3

     A.    Statement Of The Facts...............................................3

     B.    PwC Moves To Compel Arbitration..........................7

     C.    The District Court Grants PwC's Motion To
         Compel Arbitration ...................................................9

SUMMARY OF ARGUMENT ...............................................................10

ARGUMENT ....................................................................................14

     I.    Standard Of Review ...................................................15

     II.    The District Court Correctly Held That Aldea Consented
         To PwC's Arbitration Agreement .....................................15

         A.    There is no genuine dispute of fact that Aldea
            received the Arbitration Agreement via email..........................18

         B.    There is no genuine dispute of fact that Aldea
            received the Arbitration Agreement via first-class
            mail.........................................................................22

         C.    The email and letter provided more than sufficient
            notice ......................................................................27

III.    The District Court Correctly Held That PwC's
        Arbitration Agreement Is Enforceable ................................................32

CONCLUSION .....................................................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air-Con, Inc. v. Daikin Applied Latin Am., LLC,*
    21 F.4th 168 (1st Cir. 2021).....................................................................15

*Aponte Valentin v. Pfizer Pharms., LLC,*
    208 D.P.R. 263 (2021), App.91 ...................................... 2, 11, 16, 19, 22, 31, 32

*Ashford v. PricewaterhouseCoopers LLP,*
    954 F.3d 678 (4th Cir. 2020) ................................................................33

*Benitez-Navarro v. Gonzalez-Aponte,*
    660 F. Supp. 2d 185 (D.P.R. 2009) .........................................................32

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006)..........................................................................25

*Campbell v. Gen. Dynamics Gov't Sys. Corp.,*
    407 F.3d 546 (1st Cir. 2005)................................................ 13, 27, 28, 29, 30, 31

*Cemex De P.R., Inc. v. Ductor, Inc.,*
    2010 WL 1727834 (D.P.R. Apr. 26, 2010) .................................................16

*Chatziplis v. PricewaterhouseCoopers LLP,*
    2018 WL 3323820 (S.D.N.Y. July 6, 2018)................................................33

*Citibank Glob. Mkts., Inc. v. Rodriguez Santana,*
    573 F.3d 17 (1st Cir. 2009)..................................................................15

*Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.,*
    638 F.3d 367 (1st Cir. 2011).................................................................14

*Anderson ex rel. Dowd v. City of Boston,*
    375 F.3d 71 (1st Cir. 2004)..................................................................32

*Garcia-Clara v. AIG Ins. Co. P.R.,*
    2016 WL 1261058 (D.P.R. Mar. 30, 2016)..................................................18

*Green Tree Fin. Corp. v. Bazzle,*
    539 U.S. 444 (2003)..........................................................................17

*Harrell v. PricewaterhouseCoopers LLP,*
    No. 3:16-cv-3371, ECF No. 18 (N.D. Tex. Jan. 12, 2017) ...............................33

*Hoefs v. CACV of Colo., LLC,*
    365 F. Supp 2d 69 (D. Mass. 2005).........................................................26

*Isaacson v. N.Y. Organ Donor Network*,
405 F. App'x 552 (2d Cir. 2011) .......................................................................24

*Johnson v. Harvest Mgmt. Sub TRS Corp.--Holiday Ret.*,
2015 WL 5692567 (S.D. Ind. Sept. 25, 2015).............................2, 13, 22, 24, 26

*Joshi v. Ashcroft*,
389 F.3d 732 (7th Cir. 2004) .............................................................................24

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
581 U.S. 246 (2017)...........................................................................................25

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019).......................................................................................17

*Lockette v. Morgan Stanley*,
2018 WL 4778920 (S.D.N.Y. Oct. 3, 2018)............................................2, 12, 21

*Manigault v. Macy's E., LLC*,
318 F. App'x 6 (2d Cir. 2009) ..............................................2, 12, 25, 26

*Narragansett Indian Tribe v. Warwick Sewer Auth.*,
334 F.3d 161 (1st Cir. 2003)..................................................................12, 23, 24

*Nat'l Fed'n of the Blind v. Container Store, Inc.*,
904 F.3d 70 (1st Cir. 2018)................................................................................30

*Otero Carrasquillo v. Pharmacia*,
382 F. Supp. 2d 300 (D.P.R. 2005) ...................................................................24

*Oyola v. Midland Funding, LLC*,
295 F. Supp. 3d 14 (D. Mass. 2018)............................................................13, 26

*P.R. Elec. Power Auth. v. Action Refund*,
515 F.3d 57 (1st Cir. 2008)...............................................................................33

*P.R. Ports Auth. v. Umpierre-Solares*,
456 F.3d 220 (1st Cir. 2006)..............................................................................15

*Porzio v. PricewaterhouseCoopers LLC*,
No. 159531/2018 (N.Y. Sup. Ct. June 25, 2019) ..............................................34

*Rivera-Colon v. AT&T Mobility P.R., Inc.*,
913 F.3d 200 (1st Cir. 2019)..............................................................13, 15, 19, 28

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
170 F.3d 1 (1st Cir. 1999)..................................................................................27

*Soto v. State Indus. Prods., Inc.*,
642 F.3d 67 (1st Cir. 2011)................................................................................21

v

*Teachers Annuity v. Soc. de Gananciales*,
    115 D.P.R. 277, 15 P.R. Offic. Trans. 372 (1984) ............................................16

*Tinder v. Pinkerton Sec.*,
    305 F.3d 728 (7th Cir. 2002) ...................................................2, 12, 21

*Uwakwe v. Pelham Acad.*,
    286 F. Supp. 3d 213 (D. Mass. 2017)............................................12, 24

*Versmesse v. AT&T Mobility LLC*,
    2014 WL 856447 (N.D. Ind. Mar. 4, 2014)........................................22

**STATUTES**

28 U.S.C. § 1291 ............................................................................2

28 U.S.C. § 1331 ............................................................................2

28 U.S.C. § 1367 ............................................................................2

P.R. Laws Ann. tit. 31, § 3391 ...............................................................15

**RULE**

P.R. R. Evid. 304, P.R. Laws Ann. tit. 32, app. IV ...................................................24

## REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD

There is no need for oral argument. The district court correctly applied well-settled law to the concise record and appropriately granted PricewaterhouseCoopers' motion to compel arbitration. But to the extent the Court would find it helpful to the resolution of this appeal, Defendant-Appellee stands ready and will be pleased to present oral argument.

# INTRODUCTION

The dispute in this appeal is narrow.  Plaintiff Jennifer Aldea-Tirado does not dispute that the Arbitration Agreement at issue encompasses her claims.  Nor does she dispute that the emails and letters PricewaterhouseCoopers ("PwC") sent to its employees containing the Arbitration Agreement—or the Agreement itself—provided sufficient notice of the Agreement's key terms.  All three—the emails, the letters, and the Agreement—expressly state, in bold font, that both PwC and its employees mutually agreed to waive their right to a trial by judge and jury in court in favor of arbitration.  And all three expressly state, also in bold font, that continued employment with PwC after the Agreement's effective date would constitute consent to the Agreement.

Likewise, Aldea does not dispute that, as a matter of Puerto Rico law, continued employment is a valid form of tacit consent to an arbitration agreement.  And she agrees that she remained employed with PwC after the effective date of PwC's Arbitration Agreement.

The only dispute on appeal is thus whether Aldea received an email or letter from PwC containing the Arbitration Agreement.  Although Aldea's brief discusses "consent," "notice," and "unconscionability," all of her arguments boil down to the same assertion—that she did not receive the email or letter.

The district court correctly concluded that there is no genuine dispute of fact—Aldea received both. PwC's unrebutted evidence confirms that it sent an email containing the Arbitration Agreement to Aldea's correct email address and a letter containing the Arbitration Agreement to Aldea's correct home address. Aldea's declaration states that she did not receive either. But many courts have concluded that such denials of receipt, standing alone, do not create a genuine dispute of fact regarding whether an employee tacitly consented to an arbitration agreement through continued employment. *See*, *e.g.*, *Aponte Valentin v. Pfizer Pharms., LLC*, 208 D.P.R. 263 (2021); *Manigault v. Macy's E., LLC*, 318 F. App'x 6 (2d Cir. 2009); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Lockette v. Morgan Stanley*, 2018 WL 4778920, at *4 (S.D.N.Y. Oct. 3, 2018); *Johnson v. Harvest Mgmt. Sub TRS Corp.--Holiday Ret.*, 2015 WL 5692567, at *3 (S.D. Ind. Sept. 25, 2015). This Court should do the same.

## JURISDICTIONAL STATEMENT

Aldea invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). This Court has jurisdiction under 28 U.S.C. § 1291 because the district court dismissed this case and ordered the parties to arbitrate Aldea's claims. ADD.7.

## STATEMENT OF THE ISSUE

Whether the district court correctly held that Aldea consented to arbitration through her continued employment after receiving PwC's arbitration agreement via

email and first-class letter, both of which expressly stated that continued employ-ment would constitute consent to the arbitration agreement.

## STATEMENT OF THE CASE

### A.    Statement Of The Facts

Defendant PwC is a professional services firm providing audit, tax, and consulting services to its clients.  Plaintiff Jennifer Aldea-Tirado started full-time work at PwC in October 2013 as an associate accountant in PwC's San Juan office. *See* Plaintiff's Appendix (App.) at 7, ¶¶ 16-17.

Shortly after Aldea joined PwC, PwC instituted a new policy to resolve legal disputes between it and its employees through arbitration.  *See* App.50-54, *Affidavit of Dan Piparo*, Exhibit C.  That Arbitration Agreement provided broadly that "all disputes, controversies and claims relating to or arising out of your . . . employment with [PwC] . . . that [PwC] may have against you, or that you may have against [PwC]" would arbitrated "under the auspices of JAMS, in accordance with JAMS Employment Arbitration Rules and Procedures."  *Id.* at 50-52.  The agreement set an effective date of July 1, 2014.  *Id.* at 50.  And it explained, in bold font:  "**By continuing your employment with [PwC] on or after the Effective Date, you will be deemed to have accepted this Agreement, and you and the Firm will be bound by its terms.**"  *Id.*; *see also id.* at 54 ("**You need not sign this Agreement**

**for it to become effective.  It will become effective if you continue your employment with the Firm on or after the Effective Date.**").

PwC notified its employees of this Arbitration Agreement through two different means.  First, PwC developed an IBM Lotus Notes database to send emails containing the Arbitration Agreement to its employees and to maintain records of those transmissions.  App.41-56, *Piparo Affidavit*, ¶¶ 3-5, Exhibits A-D; App.57-72, *Affidavit of Lisa Jamison*, ¶¶ 3-4, Exhibits A-D.  Second, PwC retained Heffler Claims Group, LLC—an experienced notification services firm—to mail copies of the Arbitration Agreement to its employees through first-class U.S. Mail.  *See* App.74-89, *Affidavit of Ronald A. Bertino*, ¶¶ 2-9, Exhibits A-D.[1]

Both the email and cover letter transmitting the Arbitration Agreement were addressed from "The Office of the General Counsel" of "PricewaterhouseCoopers LLP."  App.48, *Piparo Affidavit*, Exhibit B; App.77, *Bertino Affidavit*, Exhibit A. Both stated, in bold font, that: "**Under the agreement, you and the firm mutually waive the right to a trial before a judge or jury in court in favor of arbitration for all covered claims**."  App.48, *Piparo Affidavit*, Exhibit B; App.77, *Bertino Affidavit*, Exhibit A.  And both made clear that continuing to work at PwC after July 1, 2014, would be considered acceptance of the agreement:

---

[1] Portions of *Piparo Affidavit*, Exhibit A; *Jamison Affidavit*, Exhibit A; and *Bertino Affidavit*, Exhibits B-D were redacted to protect the identifying information of PwC employees who are not parties to this litigation.

> The agreement will become effective on July 1, 2014, **and your continued employment with the firm on or after that date will indicate that you have accepted the terms of the agreement.** Please note that **your signature is NOT required for acceptance of the agreement. You will be deemed to have accepted, and will be bound by, the agreement if you continue your employment with the firm on or after July 1, 2014.**

App.48, *Piparo Affidavit*, Exhibit B; App.77, *Bertino Affidavit*, Exhibit A.

The undisputed evidence shows that PwC emailed the Arbitration Agreement to Aldea on March 31, 2014. PwC uploaded to the Lotus Notes database a "list of employees to whom the arbitration agreement was to be emailed, together with each employee's correct email address as set forth in PwC's records." App.41, *Piparo Affidavit*, ¶ 3; App.57, *Jamison Affidavit*, ¶ 3. And it sent an email—with the subject line "Important Legal Document Affecting Your Rights – PLEASE READ"—and the Arbitration Agreement to each employee. App.41, *Piparo Affidavit*, ¶ 4; *see*, *e.g.*, App.56, *Piparo Affidavit*, Exhibit D.

PwC's database records the date and time the email and Arbitration Agreement were sent to each employee. App.41-42, *Piparo Affidavit*, ¶ 5; App.57, *Jamison Affidavit*, ¶ 4. That database confirms that PwC sent the email and Arbitration Agreement to "Aldea Tirado, Jennifer" at "Jennifer Aldea Tirado/US/TLS/PwC" on March 31, 2014, at 12:11:09 PM EDT. App.45, *Piparo Affidavit*, Exhibit A; App.61, 73, *Jamison Affidavit*, Exhibits A, D. Jennifer Aldea Tirado/US/TLS/PwC "was the email reference used to route e-mails within the Lotus

5

Notes environment." App.157, *Statement of Brian T. Fox*, ¶ 5. "Lotus Notes accounts also have an internet address which is used to route email both to and from the internet"—for Aldea, that address was "jennifer.aldea.tirado@us.pwc.com." App.158, *id.* ¶ 8. "Both Jennifer Aldea Tirado/US/TLS/PwC and jennifer.aldea.tirado@us.pwc.com are valid, unique descriptors of the *same* Lotus Notes email account belonging to Jennifer Aldea Tirado." *Id.* ¶ 9 (emphasis altered); *see also* App.159, *Fox Statement*, Exhibit A (Lotus Notes database record for Aldea).

The undisputed evidence also shows that PwC sent the Arbitration Agreement to Aldea's correct home address using first-class U.S. Mail on March 31, 2014. As noted, PwC retained Heffler to distribute the arbitration agreements to its employees. App.74, *Bertino Affidavit*, ¶ 3. Heffler has extensive experience in mailing notification documents in various matters, including (at that time) more than 700 class action settlements. *Id.* ¶ 2. In its process for PwC, Heffler (1) ran the employees' addresses through the U.S. Postal Service National Change of Address database; (2) mailed the arbitration agreements to PwC's employees in Puerto Rico by first-class mail; and (3) monitored and notified PwC of any agreements returned as undeliverable. App.74-75, *id.* ¶¶ 3-5.

Following that process, Heffler mailed the Arbitration Agreement to Aldea via first class mail on March 31, 2014, at the following address: H17 Calle Toa Alta, Parq las Haciendas, Caguas, PR 00727-7750. *See* App.75, 83, *Bertino Affidavit*,

¶¶ 5-6, Exhibit B.  The envelope containing Aldea's Arbitration Agreement was not returned to Heffler as undeliverable.  *See* App.75, 89, *Bertino Affidavit*, ¶ 9, Exhibit D.

Aldea continued her employment with PwC after July 1, 2014.  *See* App.7, ¶¶ 16-17.  Thus, in the Arbitration Agreement, Aldea agreed to arbitrate "all Covered Claims" including "all disputes, controversies and claims relating to or arising out of . . . [her] employment with [PwC]."  App.50, *Piparo Affidavit*, Exhibit C.

### B.     PwC Moves To Compel Arbitration

In November 2021, Aldea sued PwC in the U.S. District Court for the District of Puerto Rico, alleging discrimination and retaliation claims under federal and Puerto Rico law.  App.5, 17-19, ¶¶ 1, 77-100.  In response, PwC provided Aldea with a copy of the Arbitration Agreement and explained that Aldea was required under that Agreement to arbitrate her claims.  *See* App.30, ¶ 11; App.147, ¶ 11.  Aldea refused to submit this matter to arbitration.  *See* App.144.

Accordingly, in January 2022, PwC moved to compel arbitration.  In support, PwC provided affidavits from two PwC employees who participated in developing the Lotus Notes database, *see* App.41-42, *Piparo Affidavit*; App.57-58, *Jamison Affidavit*, and an affidavit from a partner of Heffler, *see* App.74-75, *Bertino Affidavit*, along with supporting exhibits.

Aldea opposed PwC's motion. In her supporting declaration, Aldea stated that she "never received any written or verbal notification about the alleged modification of [her] employment contract through the incorporation of Arbitration Agreement." App.132, *Aldea Declaration*, ¶ 8. Aldea agreed that she received email from PwC in March 2014 at "jennifer.aldea.tirado@us.pwc." *Id.* ¶ 11. But she asserted that the email dated March 31, 2014, containing her Arbitration Agreement was sent to "an erroneous electronic address"—"Jennifer Aldea Tidaro/US/TLS/PwC@Americas-US." *Id.* ¶ 10. And although Aldea acknowledged that H17 Calle Toa Alta, Parq las Haciendas, Caguas, PR 00727-7750 was her "home address in 2014," App.147, she stated that she "never received notifications from PwC by mail regarding a modification of [her] employment contract," App.133, *Aldea Declaration*, ¶ 15.[2]

In support of its reply, PwC submitted a sworn statement from a PwC employee who "specializ[es] in digital forensics, including e-discovery and data analysis of Lotus Notes email for legal and regulatory matters." App.157, *Fox Statement*, ¶ 2. He explained that both Jennifer Aldea Tirado/US/TLS/PwC and

---

[2] Aldea also stated that "[a]s an attorney duly admitted to the practice of law," she recognized the importance of analyzing significant modifications to her employment contract and that "[t]rue to [her] practice," she believed that the Arbitration Agreement merited her "serious and in-depth review." App.131-32, *Aldea Declaration*, ¶¶ 6-7. But Aldea was not admitted to the practice of law until February 2019. App.7, ¶ 19.

jennifer.aldea.tirado@us.pwc.com are valid, unique descriptors of the same Lotus Notes email account—the former used to route email within the Lotus Notes environment and the latter used to route email to and from the internet. App.157-58, *Id.* ¶¶ 5-9.

Aldea filed a sur-reply. It did not provide any additional evidence, but instead asserted that PwC's evidence "expressly shows that PwC had designated as Aldea-Tirado's *Internet* Address 'jennifer.aldea.tirado@us.pwc.com' and NOT Jennifer Aldea Tirado/US/TLS/PwC@Americas-US." App.178 (emphasis added).

### C.    The District Court Grants PwC's Motion To Compel Arbitration

On September 30, 2022, the district court granted PwC's motion to compel arbitration, dismissed Aldea's claims, and ordered the parties to arbitrate her claims in accordance with the Arbitration Agreement. *See* ADD.3-6. Aldea did not dispute, the court noted, that her claims "come within the scope of the [arbitration] clause." *Id.* at 4. So the "only disputed issue is whether Plaintiff consented to the arbitration agreement." *Id.*

The court held that Aldea had "tacitly consented to the agreement." ADD.4. Both "the email and first-class mail stated, in bold letters, that Plaintiff's continued employment after July 1, 2014 would be construed as acceptance of the terms of the arbitration agreement." *Id.* And Plaintiff continued to work at PwC after that date. *Id.* Moreover, the court explained, "Plaintiff's argument that the agreement was sent

to the wrong email is belied by the record." *Id.* at 5 (citing App.159, *Fox Statement*, Exhibit A). And PwC's evidence that the Arbitration Agreement was "sent via first class mail to Plaintiff's address and never returned" established a rebuttable presumption that Aldea received it—a presumption that Aldea failed to rebut. *Id.*

In addition, the court explained, Aldea "failed to establish unconscionability as a basis to find the agreement unenforceable." ADD.5. Both the email and the first-class mail "provided fair notice of the terms of the agreement and that continued employment would be construed as consent." *Id.* at 5-6. "Plaintiff was given 60 days to review and consider the agreement, was not barred from discussing the agreement with an attorney, [and] was not threatened with termination or other adverse employment action if she did not accept the agreement." *Id.* at 6. She "was explicitly told that the communication contained an 'Important Legal Document Affecting Your Rights,' and received a copy of the agreement via two delivery methods." *Id.*

This appeal followed.

## SUMMARY OF ARGUMENT

The sole question raised by this appeal is whether a valid arbitration agreement exists between PwC and Aldea. Applying well-settled law, the district court correctly held that Aldea consented to the Arbitration Agreement by

continuing to work at PwC after receiving the Agreement via email and first-class mail. This Court should affirm.

**I.** The only disputed element of contract formation in this case is consent. Under Puerto Rico law, consent need not be express. Rather, the Supreme Court of Puerto Rico recently confirmed that continued employment constitutes a valid form of tacit consent to an arbitration agreement. *Aponte Valentin v. Pfizer Pharms., LLC*, 208 D.P.R. 263 (2021), App.91 (Certified English Translation).

Here, PwC's Arbitration Agreement expressly provided that continued employment after July 1, 2014, would constitute consent to the Agreement. And Aldea continued her employment with PwC long after that date. Although Aldea argues that she did not consent because she never received an email or letter containing the Agreement from PwC, the district court correctly concluded that there is no genuine dispute of fact. Aldea received both, and this Court may affirm on either ground.

**A.** Undisputed evidence confirms that PwC sent an email containing the Arbitration Agreement to Jennifer Aldea Tirado/US/TLS/PwC on March 31, 2014, at 12:11:09 PM EDT. Aldea contends that was the wrong email address, but that contention is belied by the record. She concedes that her correct email address was jennifer.aldea.tirado@us.pwc.com. And unrebutted evidence from a digital

forensics expert at PwC confirms that both were unique, valid descriptors of the same email account belonging to Aldea.

Aldea's declaration states that she never received the Arbitration Agreement. But a party must provide evidence to create a genuine dispute of fact, and an unsupported sworn statement denying receipt of an email is not enough. *See*, *e.g.*, *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002); *Lockette v. Morgan Stanley*, 2018 WL 4778920, at *4 (S.D.N.Y. Oct. 3, 2018).

**B.**  Undisputed evidence also confirms that the expert mail notification firm retained by PwC sent the Arbitration Agreement to Aldea via first-class U.S. Mail. That firm's records show that it mailed the letter to Aldea's correct home address and that the letter was never returned.  That evidence gives rise to a rebuttable presumption that Aldea received the letter.  *See Narragansett Indian Tribe v. Warwick Sewer Auth.*, 334 F.3d 161, 168 (1st Cir. 2003).  Aldea's statement denying receipt of the letter does not rebut the presumption or create a genuine fact dispute. *See Uwakwe v. Pelham Acad.*, 286 F. Supp. 3d 213, 220 (D. Mass. 2017) (collecting cases).

Numerous courts have applied the "mailbox rule" to compel arbitration where employees aver that they never received an arbitration agreement via mail and continued to be employed after the agreement's effective date.  *See*, *e.g.*, *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7 (2d Cir. 2009); *Tinder*, 305 F.3d at 735; *Oyola*

*v. Midland Funding, LLC*, 295 F. Supp. 3d 14, 18 (D. Mass. 2018); *Johnson v. Harvest Mgmt. Sub TRS Corp.--Holiday Ret.*, 2015 WL 5692567, at *3 (S.D. Ind. Sept. 25, 2015).

**C.** Although Aldea sets forth "notice" and "consent" as separate issues, she does not dispute that the email and letter provided sufficient notice that her claims would be subject to arbitration. The only question here is whether a valid arbitration agreement existed between PwC and Aldea, and that is a question of contract acceptance—not notice. *See Rivera-Colon v. AT&T Mobility P.R., Inc.*, 913 F.3d 200, 215 (1st Cir. 2019).

In any event, Aldea's cases confirm that PwC provided more than sufficient notice here. This Court explained in *Campbell v. General Dynamics Government Systems Corp.* that it "easily" could "envision circumstances in which a straightforward e-mail, explicitly delineating an arbitration agreement, would be appropriate." 407 F.3d 546, 555-56 (1st Cir. 2005). And the email and letter to Aldea set forth expressly and conspicuously all the information that this Court found was missing from the email in *Campbell*. Moreover, because the content of PwC's communications was clear, it makes no difference whether its means of communication were typical (although they were) or that it did not require employees to acknowledge receipt.

13

**II.**  Finally, the district court correctly held that PwC's Arbitration Agreement was not unconscionable.  Aldea has forfeited any challenge to that holding by failing to develop her argument on appeal.

## ARGUMENT

Under the Federal Arbitration Act and this Court's precedent, a court must compel arbitration if it concludes "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope."  *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011).  Here, there is no dispute that Aldea's claims fall within the scope of PwC's Arbitration Agreement or that if the Agreement is valid between the parties, then PwC is entitled to invoke it and Aldea is bound by it.  The sole question raised by this appeal is thus whether a valid arbitration agreement exists.

The district court correctly concluded that the Arbitration Agreement is valid and enforceable in this case.  Under Puerto Rico law, continued employment is a valid form of consent to an arbitration agreement.  Here, the Arbitration Agreement expressly provided that continued employment at PwC after July 1, 2014, would constitute consent to the Agreement.  There is no dispute that Aldea remained employed at PwC after that date.  And there is no genuine dispute regarding whether Aldea received the Agreement.  She did, via both email and first-class mail.  Either

of those methods would suffice, and this Court may affirm the district court's judgment on either ground.

## I.    Standard Of Review

Because district courts in this Circuit "evaluate a motion to compel arbitration against the summary judgment standard to determine whether a genuine dispute of fact exists regarding the parties' agreement to arbitrate," this Court's review is "de novo." *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 176 (1st Cir. 2021). In conducting its de novo review, this Court "may affirm a district court decision on any ground supported by the record." *P.R. Ports Auth. v. Umpierre-Solares*, 456 F.3d 220, 224 (1st Cir. 2006).

## II.    The District Court Correctly Held That Aldea Consented To PwC's Arbitration Agreement.

"Because arbitration is a creature of contract, principles of state contract law control the determination of whether a valid agreement to arbitrate exists." *Rivera-Colon v. AT&T Mobility P.R., Inc.*, 913 F.3d 200, 207 (1st Cir. 2019) (quotation marks omitted). Here, the parties agree that Puerto Rico law applies, since Aldea "was employed in the Commonwealth." *Id.* at 208. "Under Puerto Rico law, a contract has three elements: consent, a definitive (and legal) object, and consideration." *Citibank Glob. Mkts., Inc. v. Rodriguez Santana*, 573 F.3d 17, 24 (1st Cir. 2009) (citing P.R. Laws Ann. tit. 31, § 3391). The only element that Aldea challenges in this case is consent. *See* Op. Br. 15.

15

Under Puerto Rico law, consent does not need to be express. Rather, "a party may tacitly enter into an agreement through implied consent." *Cemex De P.R., Inc. v. Ductor, Inc.*, 2010 WL 1727834, at *1 (D.P.R. Apr. 26, 2010) (citing *Teachers Annuity v. Soc. de Gananciales*, 115 D.P.R. 277, 15 P.R. Offic. Trans. 372 (1984)). And the Supreme Court of Puerto Rico has confirmed that "continued employment constitutes a valid form of tacit consent to an arbitration agreement." *Aponte Valentin v. Pfizer Pharms., LLC*, 208 D.P.R. 263 (2021), App.91 (Certified English Translation).

In *Aponte Valentin*, the employer adopted a mandatory arbitration program covering all employment disputes. App.92. The employer notified its employees "by email" about the terms of the new arbitration agreement. *Id.* And the agreement "stated that, if the employee began to work or continued to work for [the employer] sixty (60) days after receiving the [a]greement," then accepting or continuing employment "would be considered as consent." *Id.* at 92-93. By remaining employed more than "sixty (60) days after being notified of the terms of the [a]greement," the Puerto Rico Supreme Court held, the plaintiff-employees "gave their consent" to the arbitration agreement. *Id.* at 113 (emphasis omitted).

Here, the Arbitration Agreement was equally clear: continued employment after the Agreement's effective date—July 1, 2014—would constitute consent to the

16

Agreement.  The Agreement itself stated in bold print:  "**By continuing your employment with the Firm on or after the Effective Date, you will be deemed to have accepted this Agreement, and you and the Firm will be bound by its terms.**"  App.50, Arbitration Agreement ¶ 1.a.  Similarly, the cover email and letter explained, also in bold print, that "**your continued employment with the firm on or after that date will indicate that you have accepted the terms of the agreement**."  App.48, *Piparo Affidavit*, Exhibit B; App.77, *Bertino Affidavit*, Exhibit A.  And they expressly stated that "**your signature is NOT required for acceptance of the agreement**"; rather, "**You will be deemed to have accepted, and will be bound by, the agreement if you continue your employment with the firm on or after July 1, 2014.**"  App.48, *Piparo Affidavit*, Exhibit B; App.77, *Bertino Affidavit*, Exhibit A.

Aldea does not and cannot dispute that continued employment constitutes a valid form of tacit consent under Puerto Rico law.[3]  She does not and cannot dispute that the Arbitration Agreement expressly and unequivocally provided that continued

---

[3] Aldea cites *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003), and *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019), for the proposition that the U.S. Supreme Court has "refused to infer consent when it comes to fundamental 'gateway' questions."  Op. Br. 13-14.  But the issue in those cases was whether the parties had agreed that such gateway questions should be decided by a court or an arbitrator.  *See Lamps Plus*, 139 S. Ct. at 1417.  Here, the district court decided whether the parties had a valid arbitration agreement.  And Aldea agrees that the court correctly looked to Puerto Rico law to resolve that question.  Op. Br. 14.

employment after July 1, 2014, would constitute consent to the Agreement. And she does not and cannot dispute that she remained employed at PwC after July 1, 2014.

Rather, Aldea's sole argument is that "no agreement—tacit or express—was perfected" because PwC "failed to provide due notice of the [A]greement." Op. Br. 16; *see also id.* at 29 ("Whether Ms. Aldea agreed—tacitly or otherwise—to 'arbitrate all claims . . .' is subject to a preliminary finding that PwC met its burden of proving that it provided timely and adequate notice."). In other words, Aldea contends that she did not consent to the Arbitration Agreement because she did not receive the Arbitration Agreement.

The district court correctly concluded, however, that there is no genuine dispute of fact regarding whether Aldea received the Arbitration Agreement. The record evidence confirms that she received the Agreement both through an email sent to her correct address *and* through a first-class letter sent to her correct address and never returned. This Court can and should affirm on either ground.

## A. There is no genuine dispute of fact that Aldea received the Arbitration Agreement via email.

Aldea concedes, as she must, that "there is nothing objectionable to the use of emails as a means of communication." Op. Br. 22. And her brief cites multiple cases compelling arbitration where—as here—the employer sent the plaintiff an arbitration agreement via email and made clear that continued employment would constitute consent to the arbitration agreement. *See id.* at 17 (citing *Garcia-Clara v.*

*AIG Ins. Co. P.R.*, 2016 WL 1261058 (D.P.R. Mar. 30, 2016)); *id.* at 25-26 (citing *Rivera-Colon*, 913 F.3d 200); *id.* at 27-28 (citing *Aponte Valentin*, App.91). Aldea does not disagree with any of those cases as a matter of law. Instead, she asserts that, in this case, PwC sent the email "to the wrong address." *Id.* at 19. But, as the district court correctly concluded, that assertion "is belied by the record." ADD.5.

The record evidence shows that PwC itself developed a database using Lotus Notes to email the Arbitration Agreement "to PwC employees and to maintain records of th[ose] transmissions." App.41, *Piparo Affidavit*, ¶ 3; App.57, *Jamison Affidavit*, ¶ 3. *Contra* Op. Br. 18 (asserting that emails were sent "by a third party contractor"). Specifically, PwC's database records the date and time the email and Arbitration Agreement were sent to each employee. App.41-42, *Piparo Affidavit*, ¶ 5; App.57, *Jamison Affidavit*, ¶ 4. And according to the database records submitted into evidence, PwC sent the email and Arbitration Agreement to "Aldea Tirado, Jennifer" at "Jennifer Aldea Tirado/US/TLS/PwC" on March 31, 2014, at 12:11:09 PM EDT. App.45, *Piparo Affidavit*, Exhibit A; App.61, 73, *Jamison Affidavit*, Exhibits A, D.

Aldea's brief concedes that her "correct electronic address . . . has been and continues to be readily available and customarily used by PwC to communicate with [her]." Op. Br. 19. She acknowledges that one of her "correct electronic addresses" was "jennifer.aldea.tirado@us.pwc.com." *Id.*; *see also* App.132, *Aldea Declaration*,

¶ 11.  And the sworn statement from Brian Fox—a specialist "in digital forensics, including e-discovery and data analysis of Lotus Notes email"—confirms that "Jennifer Aldea Tirado/US/TLS/PwC and jennifer.aldea.tirado@us.pwc.com are valid, unique descriptors of the *same* Lotus Notes email account."  App.157-58, *Fox Statement*, ¶¶ 2, 9 (emphasis altered).  The former—the address noted in PwC's database and listed on the email containing Aldea's Arbitration Agreement—was the address "used to route e-mails *within* the Lotus Notes environment."  App.157, *id.* ¶ 5 (emphasis added).  The latter was "used to route email both to and from the *internet*" for the exact same Lotus Notes account.  App.158, *id.* ¶ 8 (emphasis added).

Aldea did not attempt to submit *any* evidence to rebut Fox's sworn statement.  Rather, both her sur-reply brief in the district court and her brief in this Court include only attorney argument.  Specifically, her briefs simply state that "[t]he document submitted by PwC in its Reply [Attachment A to Declaration of Brian T. Fox] expressly shows that PwC had designated as Aldea-Tirado's Internet Address 'jennifer.aldea.tirado@us.pwc.com'     and     **NOT**     Jennifer     Aldea Tirado/US/TLS/PwC@Americas-US."  Op. Br. 23; *accord* App.178.

Exactly:  jennifer.aldea.tirado@us.pwc.com was designated as Aldea's *internet* address.  But the emailed Arbitration Agreement was *not* routed to or from the internet.  It was routed *within* the Lotus Notes environment and thus PwC's database

recorded the address used to route email within that environment.  *See* App.45, *Piparo Affidavit*, Exhibit A; App.61, 73, *Jamison Affidavit*, Exhibits A, D; App.157, *Fox Statement*, ¶ 5.

Accordingly, Aldea's own declaration confirming her correct email address, App.132, *Aldea Declaration*, ¶¶ 10-11—coupled with the unrebutted evidence that the email address in PwC's database and Aldea's internet email address were one and the same—establishes that Aldea received the Arbitration Agreement via email.

That leaves, at most, Aldea's unadorned statement that she "never received any written or verbal notification about the alleged modification of [her] employment contract through the incorporation of the Arbitration Agreement."  App.132, *Aldea Declaration*, ¶ 8.  But "'a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial.'" *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011) (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)).  And a plaintiff's statement that "she never received notice of [an arbitration] program," even supported by an affidavit that "she 'does not recall seeing or reviewing the Arbitration Program,'" is not enough to "raise a genuine issue" of fact. *Tinder*, 305 F.3d at 735-36; *see also*, *e.g.*, *Lockette v. Morgan Stanley*, 2018 WL 4778920, at *4 (S.D.N.Y. Oct. 3, 2018) (plaintiff's declaration denying receipt of email modifying arbitration agreement did

not create a genuine dispute of fact); *Johnson v. Harvest Mgmt. Sub TRS Corp.--Holiday Ret.*, 2015 WL 5692567, at *3 (S.D. Ind. Sept. 25, 2015) (plaintiff's "assert[ion] that he did not receive the e-mail" did not create a genuine dispute of fact).

"[T]o create an issue of fact on the issue of formation of an arbitration agreement, a plaintiff must do more than simply provide evidence, in the form of her own statement, that she did not see the arbitration agreement notice, when faced with undisputed evidence that the notice was sent to the plaintiff." *Versmesse v. AT&T Mobility LLC*, 2014 WL 856447, at *5 (N.D. Ind. Mar. 4, 2014); *see also Aponte Valentin*, App.98-99, 113 (holding that sworn statements of some plaintiffs that they did not receive email concerning arbitration program were insufficient). Aldea has not done so here, and thus "has failed to create a genuine issue of material fact on [the] issue of formation of the arbitration agreement." *Versmesse*, 2014 WL 856447, at *5.

**B.   There is no genuine dispute of fact that Aldea received the Arbitration Agreement via first-class mail.**

Aldea similarly failed to create a genuine issue of fact regarding whether she received the Arbitration Agreement via first-class mail. Although her brief dismisses PwC's "*mass mailing* process effectuated by a third party," Op. Br. 23, the undisputed record evidence shows that PwC's process was carefully considered, that the Arbitration Agreement was in fact sent through first-class mail to Aldea's correct address, and that the letter was not returned as undeliverable. Those undisputed facts

give rise "to a rebuttable presumption" that the Arbitration Agreement "was received." *Narragansett Indian Tribe v. Warwick Sewer Auth.*, 334 F.3d 161, 168 (1st Cir. 2003).  And the district court correctly concluded that Aldea "has not rebutted this presumption."  ADD.5.

PwC retained an experienced mailing notification firm—Heffler—to design and oversee its process for mailing the Arbitration Agreement to employees. App.74, *Bertino Affidavit*, ¶¶ 2-3.  As part of that process, Heffler received each employee's home address from PwC and sent those addresses to the U.S. Postal Service National Change of Address database "to request updated mailing addresses and to standardize the addresses in accordance with postal standards." *Id.* ¶ 4.  Heffler then sent the Arbitration Agreement to each employee in Puerto Rico using "first-class mail."  App.75, *id.* ¶ 6.  Heffler's records show that it mailed the Arbitration Agreement to Aldea on March 31, 2014, at the following address, which Aldea admitted was correct:  H17 Calle Toa Alta, Parq las Haciendas, Caguas, PR 00727-7750.  *See* App.75, 83, *id.* ¶¶ 5-6, Exhibit B; App.147.  And although Heffler monitored all mailings returned as undeliverable, Aldea's letter was not returned. *See* App.74-75, 89, *Bertino Affidavit*, ¶¶ 3, 9, Exhibit D.

As the district court explained, this undisputed evidence that the Arbitration Agreement was mailed to Aldea's correct address and never returned "'gives rise to a rebuttable presumption . . . that a properly-mailed document was received.'"

ADD.5 (quoting *Narragansett*, 334 F.3d at 168). The "widely held presumption that an addressee received a properly addressed and stamped letter," *Otero Carrasquillo v. Pharmacia*, 382 F. Supp. 2d 300, 310 (D.P.R. 2005), *aff'd*, 466 F.3d 13 (1st Cir. 2006), is specifically recognized by Puerto Rico law, *see* P.R. R. Evid. 304(23), P.R. Laws Ann. tit. 32, app. VI.

Aldea does not dispute the district court's conclusion that she failed to rebut this presumption. "She does not claim that the letter was sent to the wrong address or that [PwC] did not send the letter via first class mail." ADD.5. And numerous courts have held that a mere affidavit denying "'receipt does not rebut [the] presumption' at the summary judgment stage." *Uwakwe v. Pelham Acad.*, 286 F. Supp. 3d 213, 220-21 (D. Mass. 2017) (quoting *Isaacson v. N.Y. Organ Donor Network*, 405 F. App'x 552, 553 (2d Cir. 2011), and collecting cases). After all, "[n]othing is simpler than submitting an affidavit in which one attests that one didn't receive a particular piece of mail." *Joshi v. Ashcroft*, 389 F.3d 732, 736 (7th Cir. 2004). And "[i]f the presumption could be defeated that easily, it would serve no purpose." *Johnson*, 2015 WL 5692567, at *3. For that reason, Aldea's unsupported assertion that she "never received notifications from PwC by mail regarding a modification of [her] employment contract," App.133, *Aldea Declaration*, ¶ 15, is insufficient to create a genuine factual dispute regarding whether she received the Arbitration Agreement.

Instead, Aldea asserts that the "'common law mailbox' rule" does not apply to the receipt of arbitration agreements. Op. Br. 23-24. But she does not cite any authority to support that assertion. Nor could she: The FAA "places arbitration agreements on equal footing with all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), which means that courts cannot establish special rules that disfavor arbitration agreements, *see*, *e.g.*, *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251-52 (2017).

Unsurprisingly, numerous courts have applied the mailbox rule to compel arbitration in precisely the circumstances of this case. For example, in *Manigault v. Macy's East, LLC*, the Second Circuit reversed the district court's denial of Macy's motion to compel arbitration and remanded for the court to grant the motion. 318 F. App'x 6, 8 (2d Cir. 2009). Macy's established an arbitration program and mailed information about the program to its employees. *Id.* at 7. The plaintiff argued that she was not required to arbitrate and submitted an affidavit "stating that [she] never received the mailing." *Id.* The Second Circuit concluded that her "denial of receipt of the mailing" was "insufficient to rebut the presumption that she received the mailing," and held that she "agreed to arbitration by continuing with her employment." *Id.* at 7-8. In sum, just as in this case, "the parties agreed to arbitrate their disputes"

because plaintiff "received the mailing that contained" information about the arbitration program, "continued with her employment, and did not opt out of arbitration." *Id.* at 8.

Similarly, in *Johnson*, the employer mailed an arbitration agreement to the plaintiff, and the "mailing was not returned as undeliverable." 2015 WL 5692567, at *1. The employer also emailed information about the arbitration agreement to plaintiff. *Id.* That plaintiff too submitted an affidavit stating that he "never received the Agreement by U.S. Mail" or by "e-mail." *Id.* at *2-3. But he offered no evidence "outside of a general denial of receipt." *Id.* at *3. Applying the mailbox rule, the court held that the plaintiff received the agreement, consented by "continuing his employment," and was therefore required to arbitrate his claim. *Id.* at *3-4.

And in *Marley v. PricewaterhouseCoopers LLP*, the court applied the mailbox rule, concluded that the plaintiff had not rebutted the presumption of receipt, and compelled arbitration based on continued employment—in a case involving the *same* PwC Arbitration Agreement, mailed through the *same* process, on the *same* date as the Agreement here. *See* 2022 WL 500579, at *3-5 (D.N.J. Feb. 18, 2022); *see also*, *e.g.*, *Oyola v. Midland Funding, LLC*, 295 F. Supp. 3d 14, 18 (D. Mass. 2018) (granting motion to compel arbitration based on mailbox rule where plaintiff denied receipt of the agreement); *Hoefs v. CACV of Colo., LLC*, 365 F. Supp 2d 69, 73 (D. Mass. 2005) (adopting report and recommendation that motion to compel

26

arbitration be granted based on mailbox rule, despite plaintiff's testimony that she never received relevant amendment).

The same analysis applies here. The undisputed evidence gives rise to a rebuttable presumption that Aldea received the Arbitration Agreement when it was mailed to her correct address. Aldea's unsupported statement that she never received notifications modifying her employment contract from PwC by mail is insufficient to rebut that presumption. And because the letter stated expressly that Aldea's continued employment after July 1, 2014, would constitute consent to the Arbitration Agreement, her continued employment long after that date means that she is required to arbitrate her claims.

### C.   The email and letter provided more than sufficient notice.

Although Aldea sets forth "consent" and "notice" as separate issues on appeal, Op. Br. 1-2, she does not argue that the email and letter themselves provided inadequate notice under the test set forth in *Campbell v. General Dynamics Government Systems Corp.*, 407 F.3d 546 (1st Cir. 2005), and *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999). That test requires "minimally sufficient notice" that certain statutory claims would be covered under an arbitration agreement. *Campbell*, 407 F.3d at 547. But the holding in *Campbell* is limited to the statutory claims in that case; indeed, as this Court recognized, it is not

relevant to "the arbitrability of all claims under the sun." *Rivera-Colon*, 913 F.3d at 215.

"[H]ere, the parties don't dispute that the particular claims are arbitrable. The only question is whether a valid arbitration agreement existed in the first place, which means that the question is one of contract acceptance—not notice." *Rivera-Colon*, 913 F.3d at 215; *see* Op. Br. 16 ("Ms. Aldea contends that no agreement—tacit or express—was perfected as [PwC] failed to provide due notice of the agreement"). The dispositive issue is thus whether Aldea *received* the Arbitration Agreement via email or first-class mail. If she did, there can be no dispute that she received adequate notice that her claims were subject to arbitration.

After all, the cover email and cover letter each announced, in bold type, that "**you and the firm mutually waive the right to a trial before a judge or jury in court in favor of arbitration for all covered claims**." App.73, *Jamison Affidavit*, Exhibit D; App.77, *Bertino Affidavit*, Exhibit A. The Arbitration Agreement itself confirmed, "**The parties mutually waive their right to a trial before a judge or jury in federal, state or local court in favor of arbitration under this Agreement**." App.78, *Bertino Affidavit*, Exhibit A. The Agreement broadly defined covered claims to include "all disputes, controversies and claims relating to or arising out of your . . . employment with the Firm." *Id.* And all three made perfectly clear

28

that continued employment after July 1, 2014, would constitute consent to the Agreement.  App. 73, *Jamison Affidavit*, Exhibit D; App.77, 78, *Bertino Affidavit*, Exhibit A.

The cases Aldea cites confirm that PwC's email, letter, and Arbitration Agreement provided more than adequate notice about the parties' agreement to arbitrate.  In *Campbell*, for example, the Court noted that it "easily" could "envision circumstances in which a straightforward e-mail, explicitly delineating an arbitration agreement, would be appropriate."  407 F.3d at 555-56.  But the email in that case "undersold the significance of the [new] Policy and omitted the critical fact that it contained a mandatory arbitration agreement."  *Id.* at 558.  Unlike the email and letter here, the email in *Campbell*:  (1) "did not state directly that the Policy contained an arbitration agreement that was meant to effect a waiver of an employee's right to access a judicial forum"; (2) "did not state either that the Policy contained contractually binding terms or that the employer would treat continued employment as an acceptance of those terms"; (3) "omitted the crucial fact that, as a matter of law, the regimen would become an employee's exclusive remedy for employment-related claims of virtually every kind and description"; and (4) "did not suggest that arbitration was to become mandatory and thereby extinguish an employee's access to a judicial forum as a means for dispute resolution."  *Id.* at 557-58.

Even with all those flaws, *Campbell* was a "close case."  407 F.3d at 559.
This one is not.  PwC's email, letter, and Arbitration Agreement far exceed the pro-
vision of "minimally sufficient notice . . . signaling to a reasonable employee that
the [Agreement] was a contractual instrument whose terms would be deemed ac-
cepted upon continued employment."  *Id.*  Each communication made those points
explicitly, conspicuously, and cumulatively.[4]

Relying on *Campbell*, Aldea argues that PwC's email and letter were not "typ-
ical in comparison to other significant communications transmitted to the plaintiff
over the course of her employment."  Op. Br. 21.  But that argument fails legally and
factually.  As a matter of law, *Campbell* reasoned that, in light of the employer's
previous practice of using "conventional writings that required a signature on a piece
of paper" and "placed in a personnel file" to make "significant alterations to the
employment relationship," the subsequent "e-mail communication, in and of itself,
was not enough to put a reasonable employee on inquiry notice of an alteration to
the contractual aspects of the employment relationship."  407 F.3d at 556-57.  Thus,

---

[4] For that reason, Aldea's reliance on *National Federation of the Blind v. Container
Store, Inc.*, 904 F.3d 70 (1st Cir. 2018), is misplaced.  There, this Court held that
three plaintiffs who were blind had not entered into a consumer arbitration agree-
ment when they signed up for an in-store loyalty program.  *Id.* at 83-85.  The record
was "devoid of any evidence that the arbitration agreement was reasonably commu-
nicated" to them, and the "terms of the clause" were not "so conspicuous that they
nevertheless [could] be charged with constructive notice of its existence."  *Id.* at 83.

inquiry notice there turned on "the *content* of the communication." *Id.* at 557 (emphasis added). Here, because the content of the communications was crystal clear, it makes no difference whether the means of communication were typical.

And as a matter of fact, Aldea *concedes* that "PwC's practice was to notify [her] of implemented policies that affected her rights as an employee through the email addresses on record." Op. Br. 22-23. As explained, there is no genuine dispute that PwC did exactly that here—and sent Aldea the Arbitration Agreement via first-class mail as well. *Supra* 18-27.

Aldea protests that PwC did not "require a response to the email." Op. Br. 22. But neither *Campbell* nor any other case Aldea cites suggests that doing so is a requirement of adequate notice. *See* 407 F.3d at 557 ("[W]e do not hold that the requirement of an affirmative response is necessary to satisfy [the Electronic Signatures in Global and National Commerce Act] in every circumstance.").[5] To the contrary, in *Aponte Valentin*, only three of the twenty-five plaintiffs acknowledged electronic receipt of the arbitration agreement. App.97. The remaining plaintiffs alleged under oath that they did not receive the email or that they received it and did not agree with it and/or that they did not attend any meeting in which the agreement was

---

[5] Moreover, the example emails Aldea submitted where PwC did require a response are from 2021, App.141, 142, and thus have no bearing on whether a reasonable PwC employee in 2014 would have expected PwC to require a response to an email communicating a significant change in employment terms.

discussed.  App.98-99.  Yet the Puerto Rico Supreme Court held that the company properly notified all plaintiffs of the arbitration agreement and that all plaintiffs consented to it because they continued working for the company 60 days after receiving it.  App.112-13.  This Court should reach the same result here.

## III.   The District Court Correctly Held That PwC's Arbitration Agreement Is Enforceable.

At times, Aldea's brief invokes the language of "unconscionability."  *See*, *e.g.*, Op. Br. 16, 22.  But she does not present unconscionability as an issue on appeal, *see id.* at 1-2, nor does she argue that PwC's Arbitration Agreement is *substantively* unconscionable.  *See Benitez-Navarro v. Gonzalez-Aponte*, 660 F. Supp. 2d 185, 193 (D.P.R. 2009) ("An arbitration provision is valid unless it is procedurally and substantively unconscionable.").  And her cursory references to unconscionability appear to be simply another way of arguing that she did not receive PwC's Arbitration Agreement.  *See* Op. Br. 16 (asserting that no agreement was perfected and "to pretend otherwise is unconscionable").

As a result, Aldea has forfeited any argument that the district court erred in holding that she "failed to establish unconscionability as a basis to find the agreement unenforceable."  ADD.5; *see Anderson ex rel. Dowd v. City of Boston*, 375 F.3d 71, 91 (1st Cir. 2004) ("When a party includes no developed argumentation on a point, as is the case here, we treat the argument as waived under our well established rule.").

In any event, the district court correctly concluded that PwC's email and first-class mail "provided fair notice of the terms of the agreement and that continued employment would be construed as consent." ADD.5-6. And Aldea has never attempted to identify any term of PwC's Arbitration Agreement that "exhibits an 'excessively onerous quality that reaches the point of bad faith.'" *P.R. Elec. Power Auth. v. Action Refund*, 515 F.3d 57, 68 (1st Cir. 2008), *abrogated on other grounds as recognized by Portugues-Santana v. Rekomdiv Int'l*, 657 F.3d 56 (1st Cir. 2011); *see also Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 684-86 (4th Cir. 2020) (holding that PwC's Arbitration Agreement is not unconscionable); *Chatziplis v. PricewaterhouseCoopers LLP*, 2018 WL 3323820, at *3-4 (S.D.N.Y. July 6, 2018) (same).

*     *     *

Courts have repeatedly found the same PwC Arbitration Agreement at issue in this case, including when notified using the same methods used here, to be valid and enforceable. *See*, *e.g.*, *Ashford*, 954 F.3d at 683-86 (reversing and remanding with instructions to dismiss the complaint and compel arbitration); *Marley*, 2022 WL 500579, at *3-5 (granting motion to compel arbitration and staying case); *Chatziplis*, 2018 WL 3323820, at *3-5 (granting motion to compel arbitration and staying case); *Harrell v. PricewaterhouseCoopers LLP*, No. 3:16-cv-3371, ECF No. 18 (N.D. Tex.

33

Jan. 12, 2017) (same); *Porzio v. PricewaterhouseCoopers LLC*, No. 159531/2018

(N.Y. Sup. Ct. June 25, 2019) (same).  This Court should, too.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment below.

Dated:  February 28, 2023                      Respectfully submitted,

  /s/ *Jason C. Schwartz*

Pedro J. Torres-Díaz                      Jason C. Schwartz
Ana B. Rosado-Frontanés               Jacob T. Spencer
Jackson Lewis LLC                         Gibson, Dunn & Crutcher LLP
American International Plaza, Suite 404   1050 Connecticut Avenue, NW
250 Muñoz Rivera Avenue             Washington, DC  20036
San Juan, PR  00918                       (202) 955-8500
(787) 522-7305                               jschwartz@gibsondunn.com
Pedro.Torres-Diaz@jacksonlewis.com   jspencer@gibsondunn.com
Ana.Rosado@jacksonlewis.com

*Counsel for Defendant-Appellee PricewaterhouseCoopers LLP*

34

## CERTIFICATE OF COMPLIANCE

1.     The foregoing Response Brief for Defendant-Appellee PricewaterhouseCoopers LLP complies with the type-volume requirement of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,795 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  February 28, 2023            /s/ *Jason C. Schwartz*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2023, I caused the foregoing Response Brief for Defendant-Appellee PricewaterhouseCoopers LLP to be electronically filed with the Clerk of the Court via the Court's CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


　/s/ *Jason C. Schwartz*