## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

No. 22-1806

### JENNIFER D. ALDEA-TIRADO
**Plaintiff - Appellant**
v.
### PRICEWATERHOUSE COOPERS LLP
**Defendant - Appellee**

### ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
### DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

### HONORABLE JAY A. GARCÍA-GREGORY
### UNITED STATES DISTRICT JUDGE
### CASE NO. 21-1525

### REPLY BRIEF

S/ *Maricarmen Almodovar-Diaz*
Maricarmen Almodovar-Diaz
USDC-PR: 204406
P.O. Box 363871
San Juan, PR 00936-3871
787-233-3306
Email: malmodovarlaw@gmail.com

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

No. 22-1806

### JENNIFER D. ALDEA-TIRADO
**Plaintiff - Appellant**

v.

### PRICEWATERHOUSE COOPERS LLP
**Defendant - Appellee**

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... -i-

REPLY BRIEF                                                          Pages

    I.     Introduction ...................................................... 1-2

    II.    Response to Appellee's Arguments ................. 2

        A.    Appellee's Arguments and alleged Evidence
            of Due Notice .................................... 2-6

        B.    Presumption of Receipt by Regular Mail ... 7-11

Certificate of Service .......................................................... 11

No. 22-1806

# TABLE OF AUTHORITIES

**Pages**

**Cases:**

*Lockette v Morgan Stanley,*
2018 WL 4778920 (S.D.N.Y. Oct. 3, 2018);                    *8*

*Tinder v. Pinkerton Sec.,*
305 F.3d 728, 735 (7th Cir. 2002);                          7

*Uwakwe v. Pelham Acad.,*
286 F. Supp. 3d 213 (D. Mass. 2017).                        8, 9

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

No. 22-1806

## JENNIFER D. ALDEA-TIRADO
**Plaintiff - Appellant**

v.

## PRICEWATERHOUSE COOPERS LLP
**Defendant - Appellee**

### ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
### DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

### HONORABLE JAY A. GARCÍA-GREGORY
### UNITED STATES DISTRICT JUDGE
### CASE NO. 21-1525

### REPLY BRIEF

**Counsel for Plaintiff**
**Maricarmen Almodóvar-Díaz**
**U.S.C.A. No. 5970**
**U.S.D.C.-P.R. No. 204406**
**P.O. Box 363871**
**San Juan, Puerto Rico 00936-3871**
**(787) 233-3306**
**malmodovarlaw@gmail.com**

iv

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

No. 22-1806

### JENNIFER D. ALDEA-TIRADO
**Plaintiff - Appellant**

v.

### PRICEWATERHOUSE COOPERS LLP
**Defendant - Appellee**

### REPLY BRIEF

TO THE HONORABLE COURT:

NOW COMES APPELLANT JENNIFER D. ALDEA-TIRADO and most respectfully submits the following to Reply to Appellee PricewaterhouseCoopers' Response to her Brief on Appeal:

### I. Introduction

Appellee diverts the focus of the controversy before the Court. The issue before the Court is not whether emails are an accepted mechanism to notify employees about the existence of an Arbitration Agreement on one hand, or whether "the mailbox rule", in isolation, is sufficient to construe tacit agreement to arbitration. Instead, the issue centers on whether the totality of the factual circumstances in this case support the conclusion that the existence of material issues

1

of fact surrounding adequate notice preclude the Court from concluding that an enforceable Arbitration Agreement exists in this case.

## II. <u>Response to Appellee's Arguments</u>

Appellee breezed over the legal arguments presented by Ms. Aldea Tirado that discussed and showed the contextual factual scenarios that distinguish diverse court's rulings on "tacit consent" to Arbitration that are inapposite to the factual realities of the case at bar. None of the cases cited by the Appellee reflect the finding of "tacit consent" in the factual context of this case. Ms. Aldea incorporates herein each of the legal arguments presented in her Brief on Appeal.

A.     Appellee's Argument and Alleged Evidence of Due Notice

Here, in support of its argument that it provided due and adequate notice of the Arbitration Agreement, PWC submitted as evidence that it:

1.  forwarded the Agreement to the email account linked to the Lotus Database; *See,* Declarations of Dan Shapiro, App. pp. 44-45; Lisa Jamison, App. pp. 62-65;

2.  The email linked to Ms. Aldea in the Lotus Database was Jennifer Aldea Tirado/TLS/Pwc@American-US, App. pp. 46-48 [See, Records about PwC's mass mailing process, Exhibit D of PwC's Motion to Compel Arbitration];

3. Declaration by Don Shapiro to sustain that the "Lotus simultaneously [Arbitration Agreement] to email account linked to the Database, App. pp. 44;

4. Declaration of Lisa Jamison to sustain the Lotus Database contains a copy of the Cover Email, the Arbitration Agreement and the date and time in which it was notified. App. pp 60-61;

5. Provided a copy of an example of "one of these employee email stored in the database." App. p. 61;

6. The example provided of the notification refers to an employee named "Yolanda Lebron." App. p. 75.

Thus, PwC submitted a document directed to a non-party in an attempt to demonstrate that Ms. Aldea was similarly notified. This attempt is a *non sequitur*. Appellee's multiple submissions are devoid of any evidence that it sent a Cover Letter and Arbitration Agreement to Ms. Aldea herself, even to the electronic address that Ms. Aldea contends was not in use on the regular and ordinary course of business. The void is inexcusable as according to Shapiro and Jamison, this information is stored in its Database. Should PwC's position be true, there is no explanation for its failure to produce a copy of the evidence of the Cover Letter and Arbitration Agreement directed to Ms. Aldea herself. PwC's silence on this matter

3

loudly calls to the discredit of Appellee's assertion of having complied with its duty to adequately notify Ms. Aldea of the existence of the Arbitration Agreement.

As consistently averred and demonstrated by Ms. Aldea, the electronic address Jennifer Aldea Tirado/TLS/Pwc@American-US it is not PwC's standard practice and procedure to notify Personnel Policies and procedures. *See,* Aldea's Brief at pp.13-15 and App. pp.143-145.

Moreover, while PwC submitted a document that purports to represent the record of notification to Ms. Aldea's lotus address, it failed to produce any similar record or document to attest that it forwarded the Agreement to either Jennifer.Aldea.Tirado@us.pwc.com  or  JenniferAldea@gmail.com, electronic addresses used by PwC in the regular course of business as shown in App. pp. 143-145. It is reasonable to believe that such a record exists or should have existed in the Lotus Notes system memory. PwC offered no explanation as to why it was incapable of producing documents from the Lotus Notes system to demonstrate that in fact the system issued the alleged notifications to employees at the correct email address used by its own Human Resources Department and relied solely on an employee's declaration and not on objective documentary record to attest to the truth of Shapiro's or Jamison's rendition.

It is also noteworthy that PwC failed to submit any document that would remotely attest that the Lotus Notes system in fact, also notified the document to the

4

employee's email used by its own Human Resources Department. Instead, it merely produced a copy of a template directed to an employee to the PwC address, challenged by Ms. Aldea, employee's email address used by the Human Resources Department. PricewaterhouseCoopers could have submitted declarations from similarly situated employees to support what the contracted third parties sustain: that the email sent through the "lotus notes" and database was actually received by the employees it intended to notify about the existence of the Arbitration Agreement.

Similarly, absent is PwC's submission of a Declaration by any of the employees similarly situated to Ms. Aldea, to further support its contention that the Agreement was in fact received by any of the employees in Puerto Rico.

While PwC provided documents in support of the alleged notification through "lotus notes" to specified electronic addresses – an address that Ms. Aldea asserts was not in use at the relevant time -, inexplicably it failed to provide similar supporting documents from the system to attest that the Arbitration Agreement was in fact notified to the email account used by PwC's own Human Resources department - Jennifer.Aldea.Tirado@us.pwc.com or JenniferAldea@gmail.com - to notify relevant personnel policies. The evidentiary void is unexplained by the Appellee. Instead, it relies on declarations that amount to nothing more than inadmissible hearsay, to attest to the alleged content of documents that were not produced as evidence in support of its own declaration. Mr. Shapiro's Declaration is

no substitute to the required evidence that should have been produced by PwC's system to attest to the truth of his allegations. The same way PwC submitted records that purport to show the lotus address it forwarded the agreement to a non-party in this case, it could have produced evidence to show that it notified the Arbitration Agreement to Jennifer.Aldea.Tirado@us.pwc.com or JenniferAldea@gmail.com, the same electronic address used by its own Human Resources Department to notify personnel policies and procedures.

Similarly, PwC failed to explain what reasons, if any, justified its decision to divert from its own Human Resources' practices and procedures to notify such important, employment contract modification to the employees' working email address, preferring instead the use of Lotus Notes which is devoid of any mechanism to attest receipt.

It must be noted that Ms. Aldea requested the District Court for the opportunity to engage in short discovery before the Court had an opportunity to rule on the existence of an enforceable Arbitration Agreement. See, App at p. The District Court ruled in favor of compelling arbitration without affording Ms. Aldea an opportunity to adequately engage in discovery and challenge PwC's assertions.

The appellee has thus failed to provide evidence to show that it actually complied with its duty to provide timely and adequate notice of an Arbitration Agreement to render it enforceable.

B.      Presumption of receipt by regular mail

The Appellee refers to several cases from different Circuits and districts in its attempt to solidify its argument that it is presumed that Ms. Aldea received the Arbitration Agreement by mail because it was not received back as undelivered.

A review of some of these cases show that the factual scenarios are inapposite to the case at bar, including but not limited due to the fact that the employer, in contrast with PwC, engaged in multiple concrete actions to notify – more than once – about the existence of a binding Arbitration Agreement.

In *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir. 2002)*,* the issue centered on whether the plaintiff had received sufficient consideration as corollary to the enforceability of the arbitration agreement. The plaintiff did not deny receiving the Agreement but stated she did not recall having received it. Contrary to the case at bar, Pinkerton, unlike the employer in this case, attested the fact that an informative brochure about the Arbitration Agreement was not only directly served upon the employee with the employee's payroll check but that it was in fact received by the employee. It provided evidence additional evidence that it conducted an internal campaign to remind employees about the existence of the Arbitration Agreement and, additionally, published the Arbitration Agreement in the Monthly Internal Magazine delivered to the employees. It is within these factual circumstances that the court ruled that the "mailbox presumption" applied.

Appellee, in contrast, is utterly unable to certify that the notification of the Arbitration Agreement was either duly notified to the correct email and much less that it was received by the employees.

In *Lockette v Morgan Stanley,* 2018 WL 4778920 (S.D.N.Y. Oct. 3, 2018), the court applied the "mailbox rule" when the evidence showed that the employee had received a Form containing the pre-dispute resolution clause explaining the Financial Industry Regulatory Authority (FINRA) arbitration rules, an internal dispute resolution program called CARE (Convenient Access to Resolution for Employees) was in effect at the time the plaintiff joined Morgan Stanley and an explanatory guidebook was individually emailed to the employee's work account. In *Lockette,* unlike the case at bar, there was no issue about which was the correct employee email account, the employee was notified from the outset of employment about the existence of the dispute resolution program and was provided with different written sources where the dispute resolution program was notified and discussed.

Here, the appellee did not even follow the office procedure used in the regular course of business.

In *Uwakwe v. Pelham Acad.,* 286 F. Supp. 3d 213 (D. Mass. 2017), the court collected cases that discussed the application of the "mailbox rule" within the context of receipt of the Right-to-Sue Letter issued by the Equal Employment

8

Opportunity Commission which established the commencement of the ninety-days (90) limitation period to file a Complaint in federal court. In *Uwakwe,* unlike the case at bar, the plaintiff alleged she did not recall having received the Right-to-Sue Letter. However, the plaintiff's attorney did. Thus, whether the plaintiff had received, recalled or not having received the letter turned irrelevant because her appointed legal representative had thus, resolving the issue of timely and adequate notice.

It is important to underscore that the court in *Uwakwe* explained the reason for applying the "mailbox rule," not arbitrarily or automatically but within the context. The court stated: "The cases holding that mere denial is insufficient to overcome the presumption do not clearly set forth the rationale for doing so. Presumably, those courts were concerned that clear proof of actual mailing or receipt is usually impossible to obtain, that the presumption would be virtually meaningless if it could be overcome so easily. Permitting such a result would undercut the legislative scheme, including the short limitations period, which is intended to promote the swift and fair resolution of employment discrimination disputes. And, of course, a bare denial of receipt is easy to fabricate and nearly impossible to rebut." *Uwakwe,* at 223.

The concerns of the court in *Uwakwe* do not exist in this case. There is no reason for PwC not to have ensured that the employees received the Arbitration

9

Agreement, first, by forwarding it to the email used by Human Resources in the ordinary course of business, and second, by mailing such important document by certified mail. In Ms. Aldea's case, PwC intends for the automatic application of the generic presumption to a correspondence that was allegedly mailed to an old address eight (8) years ago. And Ms. Aldea does not "merely deny" that she received the document, but she attested under oath as an attorney and officer of the court that:

7.  As an attorney duly admitted to the practice of law, I recognize the importance of reviewing, analyzing, considering and responding to documents submitted by my employer that have the heightened relevance of effecting of significant modifications to the terms and conditions of my employment contract.

8.  True to my practice, I consider an Arbitration Agreement submitted by my employer that modifies the terms and conditions of my employment contract a document that merited my serious and in-depth review, analysis, consideration and discussion.

9.  I submit under oath that I never received any written or verbal notification about the alleged modification of my employment contract through the incorporation of Arbitration Agreement.

10. I submit under oath that the first time that I was apprised about the alleged existence of an Arbitration Agreement was after PwC's legal

10

representation submitted for my legal representation's review an alleged
email with my name on it in which the PwC purports to communicate the
existence of a "newly implemented policy" requiring employees to submit
to arbitration of all employment disputes.

App. pp 131-133.

Ms. Aldea's is not a mere denial, but a specific rebuttal of any presumption of
receipt given her personal and professional circumstances that credit an assumption
of personal and professional engagement with the matter had she in fact received a
communication notifying a significant modification of the terms and conditions of
her employment agreement.

Thus, a material issue of fact continues to exist on whether PwC comply with
its duty to notify Ms. Aldea of such contractual modification deeming erroneous as
a matter of law the District Court's Order compelling arbitration.

For the above stated reasons, Ms. Aldea most respectfully requests that this
Honorable Court reverse the District Court's Order Compelling Arbitration.

**WHEREFORE**, Ms. Jennifer Aldea-Tirado most respectfully requests that this
Honorable Court reverse the District Court's Order Compelling Arbitration.

**I HEREBY CERTIFY** that the foregoing document was filed with the Clerk of the
Court using CM/ECF system, which will automatically send notification of such
filing to counsel of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 7th day of April, 2023.

S/ *Maricarmen Almodovar-Diaz*
Maricarmen Almodovar-Diaz
USDC-PR: 204406
P.O. Box 363871
San Juan, PR 00936-3871
787-233-3306
Email: malmodovarlaw@gmail.com
